## BELL v. HOLDCRAFT.

### No. 6126.

Court of Appeal of Louisiana.
Second Circuit.

May 3, 1940.

Truett L. Scarborough, of Ruston, for appellant.

Munholland & Munholland, of Monroe, for appellee.

DREW, Judge.

Plaintiff filed this suit on September 4, 1934. He alleged that on September 9, 1931, he sold and delivered to defendant mill work, building materials and builder's supplies to the amount of $340.61 and that no part of said bill had been paid. An itemized statement was attached to the petition and judgment prayed for accordingly.

On October 13, 1934, defendant, represented by counsel, filed a plea of prescription of three years. The minutes of the court disclose that no further action was taken in the case until October 4, 1938, when the plea of prescription was referred to the merits by consent of counsel.

On November 10, 1938, the plea of prescription was overruled and a preliminary default entered; and on December 5, 1938, the default was confirmed and judgment rendered and signed for plaintiff, as prayed for.

On October 28, 1939, defendant, represented by a different counsel than the one who filed the plea of prescription, applied for and was granted a devolutive appeal to this court. This appeal was prayed for and

granted the day after seizure of defendant's property had been made under a writ of execution issued on the judgment which had previously been rendered in this case.

In this court, defendant, appellant, filed a motion to remand the case. The motion is as follows:

"1. That the judgment in the above numbered and entitled cause was rendered by the trial court on default on the date of December 5, 1938; and that the suit was filed on the date of September 4, 1934.

"2. That a copy of the original petition in the above designated suit was served on the defendant-appellant on or about the 3rd day of September, 1934; that immediately thereafter he went to Farmerville, Louisiana, and talked with Hon. J. R. Dawkins, Attorney at Law, and left with him a copy of the original petition served upon him and a number of receipts marked 'paid', showing that he had previously paid the full amount that he was sued for; and after talking with the said J. R. Dawkins some length of time, he left with the impression and full understanding that the said J. R. Dawkins was to represent him in the said suit and that he would take care of the entire matter and that he was to file suit and use the numerous receipts that defendant-appellant had left with him; that a copy of the original petition, citation and original receipts were left with the said J. R. Dawkins for the purpose of use in the defense of the said suit and that your petitioner left the said J. R. Dawkins with the understanding that he was to represent appellant in the matter, and that he heard nothing further in connection with the matter until on or about October 27, 1939, when appellee seized certain property to satisfy a judgment that had been rendered in the case, and for the first time, appellant learned that a judgment had been rendered against him; that he then went to see his attorney and learned that through a misunderstanding, no answer had been filed in the case and judgment had been rendered against him by default, all of which will be made more clear by the original receipts, a certified copy of the petition, the citation, the notice of seizure, an affidavit signed by appellant, and an affidavit signed by J. R. Dawkins, Attorney at Law, all of which is attached hereto and made a part hereof.

"3. Appellant shows that a great injustice has been done him through a misunderstanding between him and his attorney, and he has been thereby deprived of his day in court and of the right to appear and present his defense.

"4. The only recourse that defendant-appellant had after having learned that judgment had been rendered against him was to appeal the case to this Honorable Court and to ask the Court to remand the case for the purpose of permitting the appellant to present his defense and file in evidence the receipts marked 'paid'.

"5. Appellant shows that at the time he learned that judgment had been rendered against him by default, it was too late to ask for a re-hearing in the case and that the only remedy was to come into this Honorable Court and ask for relief.

"Wherefore, considering the premises and the attached affidavits, receipts and other documents, appellant prays that this motion to remand the case be filed, taken up, allowed and the case remanded to the trial court for the purpose of permitting the appellant to file an answer and plead his defense."

To the motion he attached his own affidavit and an affidavit by his former counsel, J. R. Dawkins, statements of the account sued on marked "paid" and signed plaintiff's name by someone else. It is not shown just whom he is. The affidavit executed by Mr. Dawkins is as follows:

"Before me, the undersigned legal authority, personally came and appeared J. R. Dawkins, who, after having been duly sworn, did depose and say:

"That on or about the 3rd day of September, 1934, Charles B. Holdcraft, defendant in suit No. 10,128, entitled Chancey C. Bell v. Charles B. Holdcraft, Third Judicial District Court, Parish of Union, State of Louisiana, came into his office and brought with him the citation and copy of the original petition in the above numbered and entitled suit, together with receipts marked 'paid' by C. C. Bell Manufacturing Company, and discussed with him the defense of said suit; that thereafter, he, J. R. Dawkins, filed a plea of prescription in the suit, which was overruled, and thereafter judgment was entered in the suit without his having filed an answer for the said Charles B. Holdcraft; that the said receipts remained in his files until they were called for by the said Charles B. Holdcraft on October 27, 1939, and at that time Mr. Holdcraft was greatly surprised that he had not filed an answer, used the receipts and that judgment had been rendered against him by default; that he did not file an an-

swer because of a misunderstanding between him and Charles B. Holdcraft, which misunderstanding was that Charles B. Holdcraft had not paid him at the time and he did not feel that he should file the answer until he was paid for defending the suit; that as a matter of fact nothing was said about a fee at the time, and that he is conscientiously of the opinion that an answer would have been filed and the receipts used, had it not been for a misunderstanding between him and the said Charles B. Holdcraft.

"So help him God."

Appellee objected to the filing of the motion to remand and filed a motion to dismiss the appeal, also the motion to remand, for the following reasons:

1. That same was filed on the day of argument and that the ex parte affidavits could not be considered by the court; and

2. That it is an attempt to plead the laches of appellant and his counsel.

 We find no reasons alleged for a dismissal of the appeal. An appeal will lie from a judgment rendered by default the same as from a suit wherein issue has been joined by answer. The reasons alleged for dismissal or disallowing the motion to remand go to the merits of the motion. It was timely filed.

█ Since this Court is not one of original jurisdiction, the only consideration of the affidavits we can take is to see if justice has been denied appellant or if he has been deprived of his day in court through the neglect of a court officer or otherwise.

 We are convinced that the question of the right to have the case remanded is entirely within our discretion. In the case of Burthe v. Lee, La.App., 152 So. 100, 102, the Court correctly said: "Lawsuits are not games in which courts are the mere referees or umpires, and in which technicalities must be allowed to triumph over actual justice." And in New Orleans v. LeBourgeois, 50 La.Ann. 591, 23 So. 542, the Court said: "our courts have not hesitated to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconcientious and inequitable."

In the case of Nessans v. Colomes, 130 La. 375, 57 So. 1010, plaintiff and counsel, after being confronted with a certain document which was purported to be signed by plaintiff and which was produced by defendant in the trial of the case on its merits, abandoned the suit, and judgment was entered accordingly. Later, plaintiff discovered the document was a forgery and filed rule to show cause why a new trial should not be granted. The district judge refused to grant a new trial and the Supreme Court reversed the lower court's ruling and remanded the case for a new trial. Also see Succession of Robinson, 186 La. 389, 172 So. 429.

In the case at bar there are a number of things to be taken into consideration. As soon as appellant was served with a copy of plaintiff's petition in September, 1934, he sought out counsel of his choice, explained his defense to the suit and left with him the documentary evidence on which he relied to show the claim had been paid. It seems from the affidavit that the question of fee was not discussed. It is certain that appellant was under the impression that his counsel was going to defend the suit. That he was justified in that belief is shown by the fact that counsel filed the plea of prescription in the suit. It was four years after the filing of this plea that anything further was done in the prosecution of the suit. It does not appear that there was any further discussion or any correspondence between appellant and his counsel. He was indeed a good client. He did not bother his attorney. He relied entirely upon his counsel to notify him whenever he was needed. The first knowledge appellant had that he had not been represented at the trial of his case was when his property was seized under a fieri facias, and he then immediately employed counsel to protect his rights.

█ We fail to see where appellant was guilty of any laches. He was justified in relying upon his lawyer to give him notice, and if his lawyer intended to quit the case, he rightfully could rely upon being notified of that fact. Most lawyers appreciate a client who will act as appellant did and not constantly worry them about business which has been left in their hands for attention. Lawyers are officers of the law and court, and their clients have a right to expect of them that they will look after to the best of their ability the business left in their hands.

Counsel of defendant's choice is a reputable attorney and stands high in the profession, and it is not our intention to convey the impression that he is wilfully negligent of his client's business. We have not enough of the facts to pass such a judgment. We are assuming that there was a misunderstanding. His lawyer thought one thing and his client the other, but, under the facts above set forth, we are of the opinion his client, appellant here, was justified in his belief and should not have to suffer for the misunderstanding.

If the bills marked "paid" attached to appellant's application are genuine and he has paid the account in full, it would be a miscarriage of justice to force him to pay it again. The bills sued on were made in 1931 and it was not until 1934 that suit was filed, and then not until 1938 that it was prosecuted to judgment. A further delay of a few months can make little difference, even though the debt is properly owed by defendant.

We feel sure that the interest of justice will best be served by remanding the case in order that defendant may have his day in court.

It therefore follows that the judgment of the lower court is set aside and the case remanded to the lower court to be proceeded with in accordance with the views expressed herein; all costs to abide the final determination of the case.