This litigation results from a much involved transaction in second-hand automobiles. The Weinberger Sales Company, Inc., is engaged in the distribution of perishable fruit and in its business requires its sales manager, Mr. Leonard R. Enderle, to travel extensively.
John Truett is engaged in business in New Orleans in the purchase and sale of used, or second-hand automobiles. He conducts his business as "Truett Used Car Market".
On March 3, 1939, the Weinberger Company purchased from Truett a used Ford sedan for $425, of which it paid $100 in cash, for the balance executing notes secured by chattel mortgage on the Ford. The usual discount and carrying charges were added and were included in the total of the notes. This car was turned over by the Weinberger Company to its sales manager, Enderle, who used it satisfactorily for about two months, finding it necessary, however, to replace two of the used tires with new ones. Enderle was required to make a business trip to Texas and he used the Ford for this purpose. In Laredo, Texas, he was called upon by police officers, who advised him that the Ford was a stolen car, or that it had been removed from that state in violation of law since there were mortgage notes, or conditional sales notes in existence which bore against it. They demanded that he surrender it to the police authorities of Dallas, Texas. Enderle, satisfying himself that the statements made by the police were true and that the car either had been stolen, or was subject to a prior lien and had been removed in violation of law, surrendered the car to the police and completed his business by means of buses and hired cars, expending, according to his testimony, $75 more than would have been necessary had he not been deprived of the use of the Ford. *Page 701 
On Enderle's return to New Orleans, the Weinberger Company called upon Truett to make good its loss and, after negotiations, it was agreed that Truett would allow the Weinberger Company credit of $425, the full purchase price of the Ford, which should be applied on the purchase from Truett of some other used car. The Weinberger Company selected an Oldsmobile at a price of $550. Allowance was made for $425 and the Weinberger Company, on August 19, 1939, took over the Oldsmobile and executed an additional chattel mortgage and a new note for the $125 balance and agreed to continue to make payments on the original notes which had been given in connection with the purchase price of the Ford sedan.
There is considerable dispute concerning the question of whether the Oldsmobile was unconditionally accepted by the Weinberger Company, that corporation contending that it merely accepted that car tentatively and subject to inspection and trial, and Truett maintaining that the Oldsmobile had been tested and tried by the Weinberger Company before it was accepted and that, when transfer of title was made, it was done without reservation or condition, and that the car was sold and delivered without any further condition and without any warranty except as to title, or, to use the trade expression, "as is".
Enderle found it necessary to make an extensive trip in the interests of the Weinberger Company and he used the Oldsmobile for this purpose. He was gone some two months and drove the car between 3,500 and 4,000 miles. During the trip, or after the return to New Orleans, the Oldsmobile was severely damaged by being operated without oil in the crankcase. In fact, the damage was so great that it could not be again made usable without the substitution of another motor. The car was towed to Truett's place of business and complaint was made that it had been defective when originally taken on the 19th of August, 1939. Truett, not knowing of the internal damage to the motor of the car and being anxious to retain the good will of the Weinberger Company, agreed that Enderle might try out a Nash car to see if this should prove satisfactory. At that time no definite understanding was had on the question of whether the Oldsmobile had been returned, nor concerning the amount which would be allowed on it if the Nash should be retained by the Weinberger Company. The Nash car did not prove satisfactory and it was returned. In the meantime, Truett had discovered the extensive damage which had been sustained by the Oldsmobile.
When the Weinberger Company returned the Nash, it refused to take back the Oldsmobile and demanded the return of the full purchase price of the Ford, together with the additional price paid for the Oldsmobile, since it had continued to pay the notes which had been given and, in fact, has now paid all of the said notes, together with the discount charges in both cases.
The Weinberger Company has now brought this suit, seeking recovery of the total amount expended by it on the two transactions and the additional expense, amounting to $75, to which Enderle was put by reason of being deprived of the use of the Ford during his trip to Texas.
Truett admits the sale of the Ford and that it was surrendered by Enderle and he asserts that that transaction was completely terminated by compromise when he agreed to allow the Weinberger Company credit for the full purchase price of the Ford on its agreement to purchase the Oldsmobile. He maintains that the Weinberger Company agreed unconditionally to buy the Oldsmobile and that he complied with all his legal obligations when he delivered that car to the Weinberger Company and gave full credit for the purchase of the Ford.
He maintains, also, that he is entitled to $103 for repairs which he made to the Oldsmobile after it was damaged while in possession of the Weinberger Company, and he seeks, by reconventional demand, judgment for this amount and for an additional $60 claimed as storage on the Oldsmobile.
In the alternative, in the event it be held that the sale of the Oldsmobile was only conditional and subject to trial and that, as a result, it be held that he, as warrantor of the title of the Ford, should make good the loss resulting from the surrender of that car, he prays for judgment against the Weinberger Company for the value of the Ford, asserting that the car should not have been surrendered to the police in Laredo, Texas, and that Enderle did not take the proper steps to ascertain whether the title to the said car was in truth in the Texas claimant, or whether there were prior liens held by any Texas claimant, and he also *Page 702 
claims the $103 already referred to as the cost of repairing the Oldsmobile and the $60 already referred to as the storage due on that car.
Weinberger Company has filed an exception of no cause of action to this alternative reconventional demand. This exception is directed at the fact that the Ford car, the sale of which started the series of transactions, was bought by Truett from a non-resident of Louisiana, having been transported into Louisiana from Texas, the result being, according to counsel for the Weinberger Company, that, because of the provisions of Section 2 of Act 63 of 1938, the Truett Company cannot maintain an action to recover that car, nor any part of the value or purchase price thereof, since Truett has not complied with the requirements of that act.
When the suit of the Weinberger Company was filed, Truett made no appearance and in due course preliminary default was entered and later, also, in due course judgment was rendered in confirmation of this default. During the time within which application for a new trial might be filed, Truett filed such an application, and, after a hearing, a new trial was granted. It was then that Truett filed answer and reconventional demand, as already stated. After a trial judgment was rendered dismissing the main demand and in favor of the reconvenor, Truett, for $103.
Weinberger has appealed and strenuously asserts that the district court was without power or authority to grant the new trial since, in his request for it, Truett did not set forth any of the grounds which, under Article 560 of the Code of Practice, require that a new trial be granted. Counsel concede that it is well settled that, in the granting of a new trial, nisi prius courts are and should be allowed great discretion, but that this discretion should be limited to a determination of whether there exists any of the reasons set forth in that article of the Code of Practice, and that if the application for a new trial does not contain any one of those grounds, a new trial may not be granted.
We do not so read the codal requirements, for it is clearly provided in Article 547 that courts may even "ex officio, direct a new trial in order to revise their judgments." The article to which counsel directs our attention merely sets forth several grounds, any one of which, if proven, will make it mandatory that a new trial be granted. If a party cast can show the existence of any one of those grounds set forth in Article 560, then the court must grant a new trial, but this does not mean that no other grounds may be advanced and that, if some other ground is advanced, the trial court has no discretion in the matter. It is well settled that trial courts in this state have great discretion in the matter of granting or refusing new trials.
In Burthe v. Lee, La.App., 152 So. 100, 102 appears a full discussion of this question:
"The jurisprudence of this state has firmly established the rule that trial courts have great discretion in the matter of granting or refusing new trials.
"The articles of the Code of Practice, articles 547, 557, 558, 559, and 560, indicate to our minds that the framers of the Code intended that wherever the trial judge might think it advisable, in the interest of justice, to reopen a matter, so long as the judgment had not been signed, the right to do so should exist. It is true that article 560 sets forth only three grounds on which a new trial must be granted, but that article was not intended to include all grounds on which the court might in its discretion grant a new trial, but only those three, on any one of which a new trial must be granted as a matter of right.
* * *
"Lawsuits are not games in which courts are the mere referees or umpires, and in which technicalities must be allowed to triumph over actual justice. It is our duty to permit litigants all reasonable opportunity to place before us all facts bearing on the issues involved. Manifestly, the substantive rights of the defendants here would have been denied them by a refusal of the new trial, because on the second trial a much smaller award was made. At this smaller award plaintiff has neither appealed nor answered the appeal.
* * *
"It is not unreasonable to suppose that counsel, busy with various matters growing out of the said situation with reference to the banks, might overlook for a short period some particular piece of litigation. It would, however, be most unreasonable to require the litigant in such case to suffer, wherever the power to grant relief is in the court.
"We have been cited no case and have ourselves found none in which an appellate *Page 703 
court has reversed, as an abuse of discretion, the action of a district court in granting a new trial. We consider this significant. If, in the reported decisions of a century of litigation, there can be found not one case in which abuse of discretion in granting a new trial has been considered sufficient to require the setting aside of the order granting the new trial, we feel that, for such action to be taken, manifest and gross indeed must be the abuse resorted to. We find no reason to hold that the new trial was not properly granted."
See, also, Iberville Bank Trust Co. v. Zito,169 La. 421, 125 So. 435, 436; Nessans v. Colomes, 130 La. 375, 57 So. 1010, 1011; State ex rel. Shreveport Cotton Oil Co. v. Blackman,110 La. 266, 34 So. 438; Muller v. Hoth, 105 La. 246, 29 So. 709.
In Succession of Robinson, 186 La. 389, 172 So. 429, 430, the Supreme Court quoted with approval the following from its opinion in the case of Nessans v. Colomes, supra:
"`When the record of a suit discloses enough to satisfy the court that the whole story of the case is not told, that essential facts have not been given in evidence and important documents have been omitted, and that substantial justice cannot be done between the parties in the state of the record as filed here, the court will, in its discretion, in the interest of justice, remand the case'.
* * *
"`Our courts have not hesitated to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscionable and inequitable'."
It seems that in the case at bar the reason for the failure of the defendant to file an appearance was due to his counsel's neglect and not to his own fault, and, therefore, it is obvious that substantial justice would not have been done had the new trial not been granted. In such a situation, our brothers of the Second Circuit, in Bell v. Holdcraft, 196 So. 379, 381, said:
"We fail to see where appellant was guilty of any laches. He was justified in relying upon his lawyer to give him notice, and if his lawyer intended to quit the case, he rightfully could rely upon being notified of that fact. Most lawyers appreciate a client who will act as appellant did and not constantly worry them about business which has been left in their hands for attention. Lawyers are officers of the law and court, and their clients have a right to expect of them that they will look after to the best of their ability the business left in their hands.
"Counsel of defendant's choice is a reputable attorney and stands high in the profession, and it is not our intention to convey the impression that he is wilfully negligent of his client's business."
We conclude that the discretion of the trial court in granting a new trial was properly exercised and should not be interfered with.
The exception of no cause of action which has been filed to the reconventional demand is based on the theory that the reconvenor, Truett, is attempting to recover a motor car, or a part of the selling price thereof, but, as we read that demand, it does not, except in the alternative, involve in any way the recovery of an automobile or of a part of the selling price thereof.
Truett claims that he repaired and stored the Oldsmobile which belonged to the Weinberger Company and in his reconventional demand he makes claim for his charges for these services. It is true that he does claim in the alternative that he is entitled to the return of the Ford, or of its value, but there is no necessity that we consider the effect of the statute relied upon in connection with the exception unless and until we find it necessary to consider the alternative contention of Truett.
So far as the Ford is concerned, it seems to us that all rights and obligations which may have existed as a result of its forced surrender have passed out of the case, for it is evident that Truett agreed to return to the Weinberger Company the full purchase price of that car and did so in the form of a credit on the price of the Oldsmobile.
Counsel for Weinberger Company argues that there was no compromise of the claim resulting from the surrender of the Ford since there was no written document evidencing such compromise. But there was a new chattel mortgage based on the allowance of the credit for the Ford and there was issued a bill of *Page 704 
sale showing the transfer of the Oldsmobile and in this bill of sale there was shown the credit for the price paid for the Ford. Then, too, it must be borne in mind that the amount allowed was the full amount of the claim, $425. The Weinberger Company asserted that it had lost this amount because the Ford, for which it had paid this sum, had been claimed and taken by someone else. Truett agreed that he was liable and further agreed to give credit for the full amount. This was, in truth, no compromise. It was payment in full of the amount claimed and all contentions which would have been based on the defective title of the Ford thus passed out of consideration. So that the only question which remains is whether the Oldsmobile was taken merely on trial, or was delivered unconditionally, and we think that the evidence abundantly supports the finding of our brother below that the sale was unconditional and that the Oldsmobile was accepted by the Weinberger Company without any warranty except as to title.
While the oral evidence on this question is in conflict, the record shows that, before the Oldsmobile was transferred, it was in the possession of the Weinberger Company for several days, and it does not seem reasonable that, after such a trial, the vendor would have agreed that it might be driven away on what amounted to a transcontinental tour and yet be considered as on trial. The district court reached the conclusion that the sale of this car had been completely consummated and, surely, the record does not warrant a reversal on this question of fact.
But Truett is not entitled to a personal judgment against the Weinberger Company for the services rendered to the Oldsmobile, although the car was the property of the Weinberger Company when those services were rendered and is its property still. It is admitted that the rendering of these services was not authorized by any representative of the Weinberger Company, either expressly or by implication. When that car, in its damaged condition, was left with Truett, it was merely towed in and deposited. No instructions were given and, since it is the contention of the Weinberger Company that it was being returned because it was unsatisfactory, it cannot be said that that company, in leaving it there, impliedly authorized the rendering of the services. Whether Truett is entitled to a lien on the Oldsmobile is a question which is not before us.
The judgment appealed from, insofar as it dismisses the suit of plaintiff, Weinberger Sales Company, Inc., is affirmed, and, insofar as it runs in favor of John Truett, doing business as Truett Used Car Market, plaintiff in reconvention, it is annulled, avoided and reversed and the demand in reconvention is dismissed. In all other respects the judgment appealed from is affirmed, at the cost of appellant.
Affirmed in part; reversed in part.