475 So.2d 372 (1985)
Michael DAWSON
v.
MAZDA MOTORS OF AMERICA, INC., et al.
No. CA 84 0415.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Otha Curtis Nelson, Sr., Baton Rouge, for plaintiff-appellant Michael Dawson.
Leah Barron, Baton Rouge, for intervenor-appellee Aetna Cas. & Sur. Co.
Michael T. Pulaski, New Orleans, for defendants-appellees Bridgestone Tire Co., Ltd., Mazda Distributors (Gulf), Inc., Toyo Kogyo Co., Ltd.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit in contract (redhibitory action) and tort (products liability) wherein the purchaser-operator (plaintiff) of an automobile contends a defective tire on his vehicle blew out and caused him to have an accident. The plaintiff seeks recovery for damages for personal injury, medical expenses, the value of his totally destroyed vehicle, rescission of the sale of the automobile or a diminution of the purchase price, a reasonable attorney fee and all *373 costs.[1] Made defendants were the manufacturer of the tire, the manufacturer of the automobile, the distributor of the automobile and the ultimate seller of the automobile. The plaintiff's medical payments and collision insurer intervened for amounts paid under its policy. The seller filed a motion for summary judgment which was granted.[2] A jury trial was held and the jury made the following factual findings: (1) the defendants were at fault, (2) the fault of the defendants was a cause of the accident, (3) the plaintiff assumed the risk of injury, (4) the negligence of the defendants[3] was 60%, and (5) the negligence of the plaintiff was 40%. The district court rendered judgment dismissing the suit. The plaintiff moved for a new trial and this motion was denied. The plaintiff took this devolutive appeal.[4]

FACTS
On December 26, 1979, Michael Dawson purchased a new Mazda RX-7 from Moffitt Volkswagen, Inc. in Bossier City, Louisiana, for a purchase price of $9,744.90. The vehicle was manufactured by Toyo Kogyo Company, Ltd. The tires on the vehicle were manufactured by Bridgestone Tire Company, Ltd. The vehicle was distributed to the seller by Mazda Distributors (Gulf), Inc. Dawson insured the vehicle with Aetna Casualty & Surety Company.
On October 18, 1980, at approximately 2:55 a.m., Dawson was driving his vehicle in a westerly direction on the Old Mississippi River Bridge on U.S. Highway 190 in Baton Rouge, Louisiana, when the left rear tire on the vehicle blew out. The vehicle struck the bridge railing, went out of control and wrecked. Leonard Ross, Jr. and Obidiah Green were passengers in the vehicle.

TESTIMONY OF THE WITNESSES
The plaintiff testified he was a student at Southern University and lived in an apartment located approximately ten minutes in driving time from the Old Mississippi River Bridge. On the date and at the time in question, Dawson was driving in the left westbound lane of the bridge when he heard an explosion. The car was thrown into the bridge railing and he lost control. He estimated his speed at approximately 55 or 60 miles per hour. Dawson testified he usually checked his tires every time he got gas. He always maintained his tire pressure at 26 pounds per square inch as prescribed by his owner's manual. Dawson did not notice that his tires were low, but did not recall if he checked his tires on the day of the accident. Dawson testified he had one or two beers prior to the accident.
Leonard Ross, Jr. testified that he, Dawson and Obidiah Green were going to a disco on the westbank of the Mississippi River. The vehicle did not ride in an unusual manner. Ross heard an explosion and the vehicle went out of control. The vehicle ran against the railing and then started "flipping". Although Ross did not observe the speedometer, he estimated the speed of the vehicle at 55 or 60 miles per hour.
Revere J. Christophe testified he was the Louisiana State Trooper who investigated the accident. He saw abrasion marks on the bridge railing. He also observed yaw marks and debris from the point where the vehicle struck the railing of the bridge to the final resting place of the vehicle. There were 32 feet of abrasion marks on the bridge railing and 565 feet of abrasion marks from the first point of impact with the bridge to the final resting place of the car. Yaw marks are marks made by a tire *374 when it is in an uncontrollable skid. Christophe had a blood alcohol analysis made from Dawson at the hospital, and the results of the test were 0.10 grams percent.
Keith J. Hester testified he was an auto damage appraiser for Aetna Life & Casualty Insurance Company. He inspected Dawson's vehicle and determined the cost of repair exceeded the value of the vehicle, and the vehicle was classified as a total loss. The value of the vehicle was $8,965, the policy had a $100 deductible, and the salvage value of the vehicle was $787. Dawson was paid $8,078 under the insurance policy. The insurer did not pursue the claim for medical payments.
The plaintiff called George Pappas as an expert witness. Pappas testified he was a consulting chemical engineer involved in failure analysis studies, which included passenger car tire analysis. Pappas examined the tire that blew out on Dawson's car. The tire was approximately 40% worn. The tread wear on the tire was normal, and there was no unusual wear on either the crown or center treads of the tire. If a tire is run in an overinflated condition, the center tread wears out but not the crown treads. If the tire is run in an underinflated condition, the tread wear is the opposite from that when it is operated in an overinflated condition. Pappas was of the opinion that insufficient adhesion between the top and body plies of the steel cord caused delamination between the plies which resulted in fatigue failure in the tire and the ultimate blowout. This is a defect in manufacture. The treads did not separate, and this indicates normal driving. Pappas found a tack in the tire but was of the opinion that the tack did not contribute to the tire failure because there was no wear around the tack. The failure of the tire was not caused by excessive heat due to underinflation or by speed. Adhesion between tire plies is one of the most important manufacturing conditions of a tire. This tire is designed for 100 mile per hour speeds. If there were tire failure due to speed, there would be tire chunking, and Pappas found none.
The defendants called David H. Taylor as an expert witness. Taylor testified he was the training manager for the technical service department of Bridgestone Tire Company. Taylor's job requires him to train customer service people and field engineers. Taylor inspected the tire that blew out. Air came out of the tire because there was a nail in it. The tire showed evidence of being very hot. The nail caused the tire to lose air, and the loss of air caused the tire to run hot. The heat of the tire caused it to fail. Because of underinflation, the rim rolled on the sidewall on the tire, the heat caused the interlining to start to melt and deteriorate. Heat causes the tire to turn a characteristic bluish discoloration, and Taylor found discoloration. Taylor found no evidence of adhesion failure.

FAILURE TO GRANT NEW TRIAL

(Assignment of Error No. 3)
Dawson applied for a new trial contending, among other things, that the "[j]ury erred in finding the plaintiff, Michael Dawson, assumed the risk of his injury". After a hearing, the motion for the new trial was denied. In this assignment of error, Dawson contends that "[t]he trial judge committed manifest and reversible error in not granting the appellant a new trial notwithstanding the jury's verdict on the grounds that on the face of the jury's answers to the `Jury Interrogatories' are contrary to the law and the evidence". In brief, Dawson specifically contends as follows:
The record will also show that the plaintiff, Michael Dawson, had no knowledge of the defective adhesion on threads [sic] of the tire as described by the expert witness, Dr. George Pappas. Therefore, this Honorable Court should grant the plaintiff, Michael Dawson, a new trial because the jury did not have a legal basis to have found that he was guilty of assumption of risk.
A plaintiff does not assume a risk of harm arising from a defendant's conduct unless the following factors exist: (1) the plaintiff has knowledge of the existence of *375 the risk, (2) the plaintiff understands and appreciates the character and magnitude of the risk, and (3) the plaintiff voluntarily exposes himself to such risk. Dorry v. Lafleur, 399 So.2d 559 (La.1981). Dawson contended in his petition that the Bridgestone tire (and, thus, the Mazda vehicle) was defective because of inadequate adhesion between the steel belts under the tread. The only evidence of such defect presented at the trial was the testimony of George Pappas. Pappas' testimony shows that this alleged defect is a latent one. However, for the defendants to successfully claim the affirmative defense of assumption of risk, they must prove Dawson had knowledge of the defect, understood the extent and magnitude of the risk caused by the defect and voluntarily assumed the risk arising from this defect in the tire. The testimony of the witnesses clearly shows that none of the three elements of assumption of risk were proven. Accordingly, the jury verdict that Dawson assumed the risk of the defective tire is contrary to the law and the evidence in the case.
The peremptory grounds for granting a new trial are set forth in La.C.C.P. art. 1972 which provides, in pertinent part, as follows:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence. [Emphasis added].
The word "shall" is usually construed as meaning "mandatory". Cf. La.C.Cr.P. art. 5; La.R.S. 1:3; La.C.J.P. art. 4. The official revision comment for Article 1972 is found under La.C.C.P. art. 1971. Paragraph (d) of this comment provides as follows:
Art. 560 of the 1870 Code lists the peremptory grounds for new trial. Art. 558 sets forth a discretionary provision for granting new trial. This Code adopts a similar form of presentation by providing for peremptory grounds in Art. 1972, infra, and the discretionary provision in Art. 1973, infra.
Although the trial judge has much discretion regarding applications for new trial, in a case of manifest abuse the appellate court will not hesitate to set the trial court's ruling aside, or grant a new trial when timely applied for. Succession of Robinson, 186 La. 389, 172 So. 429 (1937) Cf. Elchinger v. Lacroix, 192 La. 908, 189 So. 572 (1939); Weinberger Sales Co. v. Truett, 2 So.2d 699 (La.App. 1941).
In David v. David, 347 So.2d 885, 888-889 (La.App. 3rd Cir.1977), the court reviewed Article 1972(1) and observed as follows:
Under art. 1972(1), a judgment clearly contrary to the law and the evidence entitles an aggrieved party to a new trial. An ex parte judgment of possession has, like all other judgments, certain requirements which must be met. LSA-C. C.P. art. 3061. The court under the law must examine the petition for possession and the record of the proceedings to determine that petitioners are entitled to the relief prayed for and that all taxes have been paid. The court `tries' these questions just as if witnesses were called and testimony taken in open court. A judgment not complying with these requirements of law is erroneous, contrary to the law and the evidence, and a new trial is mandated.
....
The failure to grant a new trial here was manifestly erroneous. The judgment of possession is contrary to the law and the evidence. Where substantial justice has not been done and a litigant has been deprived of legal rights, a new trial should be granted. Succession of Robinson, 186 La. 389, 172 So. 429 (1937); Hardy v. Kidder, 292 So.2d 575 (La. 1974). [Underscoring added].
See, however, Kaplan v. Missouri-Pacific Railroad Company, 409 So.2d 298 (La. App. 3rd Cir.1981); Riddle v. Menard, 355 So.2d 1350 (La.App. 3rd Cir.1978), writ denied, 359 So.2d 627 (La.1978); Sumrall v. Trosclair, 270 So.2d 921 (La.App. 4th Cir. 1972).
*376 The judgment of the district court dismissing Dawson's claims on a factual finding of assumption of risk is clearly contrary to the law and the evidence. The failure of the district court to grant Dawson a new trial was manifestly erroneous. To achieve substantial justice, Dawson is entitled to the relief he seeks and a new trial should be granted.
There is another reason why this suit should be remanded for a new trial. In Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980), appears the following:
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.
This is not to say, and Gonzales [Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975)] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. [Underscoring added].
The principal evidence on the issue of whether there is a manufacturing defect in the Bridgestone tire is the diametrically opposed testimony of the two experts. A view of these two witnesses is essential to a fair resolution of their conflicting testimony. In addition, the jury verdicts finding assumption of risk and 40% negligence by Dawson indicate the jury rejected, at least in part, Dawson's testimony. A fact finder can accept or reject, in whole or in part, the testimony of any witness. Holmes v. Southeastern Fidelity Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983). The jury also may have accepted the part of Taylor's testimony about the tire being used in an underinflated condition in reaching these conclusions. A preponderance of the evidence on the issue of contributory negligence cannot be determined from the cold record in this case; a view of the witnesses is essential for this determination. For these additional reasons, this matter shall be remanded for a new trial by jury.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded to the district court for a new trial. The appellees are cast for the cost of this appeal. All other costs shall be assessed in a final judgment on the merits.
REVERSED AND REMANDED.
NOTES
[1] He also sought to recover expenditures lost when he had to leave college because of his injuries and for the cost of defending a traffic citation.
[2] No appeal was taken from this judgment, and it is now final.
[3] The jury did not answer interrogatories on whether the plaintiff was at fault and, if so, whether the fault was a cause of the accident. The jury was instructed on both the strict and negligent theories of recovery.
[4] The intervenor and the defendants did not appeal or answer the appeal.