430 So.2d 51 (1983)
Edward C. LAMB
v.
Janet LAMB.
No. 82-C-2107.
Supreme Court of Louisiana.
April 4, 1983.
Thomas Robert Shelton, Philip C. Kobetz, Shelton & Legnedre, Lafayette, for applicant.
Gregory K. Klein, Simon & Dauterive, Lafayette, for respondent.
BLANCHE, Justice.
On November 17, 1980, Edward C. Lamb, through his attorney, J. Minos Simon, filed suit seeking separation from bed and board on grounds of cruel treatment and constructive abandonment by his wife, Janet Lamb. Several months later, on March 25, 1981, Mr. Simon took a preliminary default in Mr. Lamb's suit and confirmation of the default judgment followed on April 8, 1981. Mrs. Lamb filed a timely motion for new trial alleging both peremptory and discretionary grounds for the granting of said motion. After a hearing, the trial court denied the defendant's request for a new trial. The court of appeal affirmed, 416 So.2d 243. We reverse. Given the circumstances of this case, we find that the trial judge abused the discretion accorded to him by La.C.C.P. art. 1973 by failing to grant a new trial.
*52 During the hearing on the motion for new trial, the following facts underlying the plaintiff's default judgment were revealed to the trial court:
Edward and Janet Lamb were married on June 13, 1968. In November of 1980, Mrs. Lamb hired Lawrence Shallcross as her attorney to sue her husband for separation from bed and board. On November 7, 1980, Shallcross did file a petition in the Fifteenth Judicial District Court, Parish of Lafayette, praying for separation on the ground of abandonment, but he failed to have the petition served on Mr. Lamb.
Mr. Lamb also employed an attorney, J. Minos Simon, to institute a suit for separation. On November 17, 1980, Simon filed a separate lawsuit in the Fifteenth Judicial District Court seeking separation from bed and board on grounds of constructive abandonment and cruel treatment.[1] On that same date, Simon sent a letter to Shallcross to inform him that he was aware of Mrs. Lamb's suit, that he represented Mr. Lamb, and that Mr. Lamb desired to resolve the controversy as expeditiously and amicably as possible.
For the next three months (December, 1980 and January and February of 1981), the attorneys attempted to reach an amicable settlement of the lawsuits. In early December, Shallcross met with Simon and asked him to produce certain financial records listed in a document entitled "subpoena duces tecum" directed to Mr. Lamb. Simon informed Shallcross that he would voluntarily provide the requested information. Shallcross reciprocated on December 17 by sending Simon copies of bank statements for Mr. and Mrs. Lamb. On February 10, 1981, the attorneys met face-to-face to review the financial records.
During this period of negotiation, a temporary restraining order was served upon Mrs. Lamb to prevent her from alienating or encumbering community property. This restraining order was periodically renewed by Simon. A similar temporary restraining order was requested by Shallcross on behalf of Mrs. Lamb and served on Simon to restrain Mr. Lamb from disposing of community property. On February 18, 1981, the attorneys agreed over the phone to the issuance of reciprocal preliminary injunctions restraining the disposition of community property. Judgment to that effect was signed on February 23, 1981.
By March 2, 1981, Mrs. Lamb decided that she could no longer communicate with her attorney Shallcross, and on that date, she telephoned him and terminated his services. At this time, she was not aware that Shallcross had not filed an answer to Mr. Lamb's suit nor was she cognizant of the fact that her attorney had failed to have Mr. Lamb served with her November 7, 1980 petition for separation.
On March 5, 1981, Simon, who as yet had not been advised of the termination of the relationship of Shallcross and Mrs. Lamb, sent Shallcross a letter requesting that he file an answer to Mr. Lamb's suit. Simon was of the opinion that further negotiation would be fruitless. Shallcross did not respond to the letter. Moreover, he neglected to inform Mrs. Lamb of the existence of the letter. Instead, on March 16, 1981, Shallcross mailed a motion to withdraw as counsel for Janet Lamb to the clerk of court; a copy of this motion was sent to Simon. Also on March 16, Mrs. Lamb received her file from Shallcross.
On March 23, 1981, the clerk of court notified Shallcross that his order to withdraw as counsel could not be signed until additional monies were remitted. Shallcross did not reply to this notice.
Simon received the copy of Shallcross's motion to withdraw on March 19. Six days later, Simon took a preliminary default on the assumption he should have been contacted by new counsel by that time even though he had no knowledge as to whether or not Mrs. Lamb had employed new counsel.
Janet Lamb, who still was unaware of the fact that no answer had been filed to Mr. Lamb's suit and who was oblivious to *53 the preliminary default entered against her, traveled to Las Vegas on March 26, 1981 for a short vacation which she had planned for several months. Returning on March 29 she telephoned her present attorney, Shelton and Legendre, the following day, and on April 7, hired them to represent her.
On April 8, 1981, Simon confirmed the preliminary default taken on the 25th of March. Judgment was signed on that day decreeing a separation in favor of Mr. Lamb based on the fault of Mrs. Lamb. Seven days later, Shelton and Legendre, who obviously had learned of the default judgment, filed this present motion for new trial which was subsequently denied.
La.C.C.P. art. 1973 provides that the trial court may grant a new trial if there exists good grounds therefor. A proper application of this article necessitates an examination of the facts and circumstances of the individual case. When the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered. Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1st Cir.1981); Jones v. Ledet, 383 So.2d 1308 (La.App. 3rd Cir.1980); Shows v. Williamson, 256 So.2d 688 (La.App. 2nd Cir.1972); See Hardy v. Kidder, 292 So.2d 575 (La.1973); Succession of Robinson, 186 La. 389, 172 So. 429 (1936). We have recognized that the court has much discretion regarding this determination. However, this court will not hesitate to set aside the ruling of the trial judge in a case of manifest abuse. La.C.C.P. art. 1971 comment (d); Hardy v. Kidder, 292 So.2d 575 (La.1973); DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896 (La.1951).
With respect to cases, such as the one at bar, wherein a timely motion for new trial is denied after the proper confirmation of a default judgment, this court has been particularly cautious in examining the circumstances underlying the judgment due to the general policy consideration, weighing in the defendant favor, that every litigant should be allowed his day in court. In Hardy v. Kidder, 292 So.2d 575 (La.1973), for example, we reversed the trial court's denial of a new trial application which had been timely filed after a preliminary default was confirmed. We found that the defendant should not have been denied the opportunity to assert his absolute defense to the plaintiff's suit where the failure to plead the defense was the result of his attorney's neglect rather than the client's fault.
However, not every motion for new trial timely filed after a default judgment warrants the granting of a new trial, for not every case involves a miscarriage of justice. Certainly, the mere failure to file an answer, without more, is not sufficient grounds to grant a new trial. DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896 (La. 1951); Raphiel v. Louisiana Ry. & Nav. Co., 155 La. 590, 99 So. 459 (1924).
We find, in the present case, that the trial judge did abuse his discretion in failing to grant a new trial. Several facts underlying the judgment weigh heavily in favor of permitting Mrs. Lamb the opportunity to assert her case on the merits:
(1) Mrs. Lamb did not realize, until after the confirmation of the default judgment, that her attorney had failed to file an answer.
(2) She hired an attorney to represent her and relied upon him to file an answer, but he neglected to do so. He also failed to notify her of opposing counsel's letter requesting an answer.
(3) Obviously, Mrs. Lamb disputed her husband's allegations of fault, for she had filed a separate lawsuit against him which alleged that he had abandoned her without cause.
(4) Six days prior to the taking of the preliminary default, plaintiff's counsel was aware that Mrs. Lamb had terminated the services of her attorney. He also knew or should have known that she desired to litigate the suit since there had been negotiations for a settlement over the previous three months. Nevertheless, no notice of his intention to take the preliminary default was sent to Mrs. Lamb. While such notice *54 was not required by law, we do regard it as relevant to the determination of whether Mrs. Lamb should be granted a new trial in the interests of justice. See Hardy v. Kidder, 292 So.2d 575 (La.1973).
The lower courts determined that the facts listed above were outweighed by Mrs. Lamb's failure to promptly retain a new attorney after she released Shallcross on March 2, 1980.[2] We disagree. Under the circumstances of this case, Mrs. Lamb could have reasonably believed there was no need for urgency in hiring new counsel. The suit had been negotiated and pending for several months. She had not been informed by her former attorney that an answer had not been filed or that an answer had been requested. Moreover, she did contact a new lawyer two weeks after she received her file and in fact had employed counsel one day before the default was confirmed.
We conclude, therefore, that given the peculiar circumstances of this case, a miscarriage of justice would result by depriving Mrs. Lamb of the opportunity to defend this case on the merits. Mrs. Lamb was victimized by the neglect of her attorney, the overzealous action of opposing counsel and the trial judge's erroneous belief that she had neglected her legal affairs. To allow this judgment to stand would be to permit technical pleading rules to triumph over actual justice. See Hardy v. Kidder, 292 So.2d 575 (La.1973); Weinberger Sales Co. v. Truett, 2 So.2d 699 (La.App.Orl., 1941).

DECREE
For the foregoing reasons, we reverse the lower courts' denial of the motion for a new trial and remand the case to trial court for a new trial. The costs of the confirmation of the default are taxed to the defendant; the costs of appellate review are taxed to the plaintiff.
REVERSED AND REMANDED for a new trial.
NOTES
[1] Mr. Lamb's suit was personally served on Mrs. Lamb on November 19, 1980.
[2] 416 So.2d 243 (La.App. 3rd Cir.1982).