REDMANN, Chief Judge.
Primarily because a default deficiency judgment was based on domiciliary service at his father’s home upon an adult son who had moved to an apartment two months earlier, but also because of allegations of executory sale without legal appraisement, we granted certiorari to review rejection of a motion for new trial and of a petition for nullity ruled upon at the same hearing.
The son is the maker and the father, also a defendant, is accomodation co-maker of a note secured by chattel mortgage on the son’s automobile and related to its purchase. The automobile was seized and sold in an executory proceeding whose proceeds did not pay the note in full. An ordinary action for the unpaid balance resulted in a deficiency judgment by default. The son, whose citation in the deficiency judgment action indicates he is employed by a local radio station, in fact had moved from the family home into his own apartment two months earlier. He did receive notice of the lawsuit from the father, and entrusted the petition for attention to an attorney who failed to answer.
We annul the judgment as to the invalidly-served son but refuse relief to the father.
I
The problem of domiciliary service of process after a change of residence is not addressed by special statutory provision. In the case of a change to another parish, the venue rule of La.C.C.P. 71 provides that an “action ... may be brought in either” the new or the former parish of domicile during the space of a year, unless the defendant has recorded the declaration of intent to change domicile authorized by La.C.C. 42 (in which case C.C.P. 42 places venue exclusively “in the parish of his domicile”). C.C. 42 did not address a *35 change of one’s home within the same parish because such a change does not produce a change in “domicile” in the sense that C.C. 38 uses the word (“domicile ... is in the parish wherein [one] has his principal [residential], establishment”).
The only express statutory provision on domiciliary service is C.C.P. 1234:
“Domiciliary service is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing therein as a member of his domiciliary establishment.”
The record in this matter does not suggest the case, for example, of a student who has merely moved into an apartment to be nearer school while still the dependent of his father. This is a case of a working adult child who has left the family home for apparently no other purpose than to establish his own place of residence. That separate residence became his “usual place of abode” within C.C.P. 1234, two months before the deficiency judgment action was instituted.
Perhaps the trial judge concluded, because C.C.P. 71’s venue rule allows suit in either parish within a year after a move from one parish to another, that domiciliary service could be had at either domicile (at least if the defendant’s family continued to reside in the first domicile). Or perhaps he concluded that, as in the case of a change of domicile from one state or parish to another, proof of intent to permanently change domicile was necessary. In either case, we disagree.
It is not necessary to prove a change of “domicile” in order to prove a change within the same parish of one’s “dwelling house or usual place of abode,” C.C.P. 1234, because domicile is not changed by a move within a parish, C.C. 38. The proof here was sufficient to show a change of the adult son’s dwelling.
And domiciliary service as authorized by C.C.P. 1234 cannot validly be made by leaving the citation with a relative at one’s former “usual place of abode” (just as proper service cannot be made by leaving citation with a co-worker at one’s office, Roper v. Dailey, 393 So.2d 85 (La.1980)). Notwithstanding that the son did receive notice of the lawsuit from the father, the controlling fact is that the citation to the son was not left at his “dwelling house or usual place of abode” — the apartment where he then lived — but at his former usual residence. That attempted domiciliary service was invalid, C.C.P. 1234, and for lack of service, C.C.P. 6, the court did not have “the legal power and authority to render a personal judgment against ...” the son.
The deficiency judgment against the son must be annulled.
II
The second attack on the default judgment is the alleged absence of proper appraisement in the executory process action. When appraisement is not had, the public policy of La.R.S. 13:4106-7, which “can not, and shall not be waived by a debtor,” disallows a deficiency judgment for any unpaid balance, against both principal debtor and any secondarily-liable party, General Motors Accept. Corp. v. Smith, 399 So.2d 1285 (La.App. 4 Cir.1981).
Defendants argue that the record documents, the writ of seizure and sale ordering appraisal and the “Writ Returned to Court” reciting that appraisal was made, do not suffice as proof of appraisal because the latter document is not signed by the sheriff as required by C.C.P. 2343. We disagree. The basic burden in civil cases is proof as more probable, than not, Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972). Defendants did not prove (though their brief did so allege) that those documents err, and that proper appraisal was in fact not made. In the absence of evidence contradicting their recitals that appraisal was ordered and had, the writ and even unsigned return suffice to show,, as more probable than not, that proper appraisal was had.
*36 III
The third basis for attacking the default judgment, and the principal basis for the motion for new trial, was that defendants had timely hired an attorney who, after unsuccessfully attempting to contact plaintiff’s counsel, in fact did not answer and did not contact plaintiffs counsel until after the default judgment had been granted. Defendants argue that clients should not suffer unnecessarily for their attorney’s negligence. We agree with that principle, but we answer that, insofar as. shown, defendants have not suffered any substantial injustice because of the attorney’s negligence.
C.C.P. 1793 authorizes new trial “in any case if there is good ground therefor, except as otherwise provided by law.” Appellate courts have often enough overruled a trial judge’s refusing a new trial, to save a client from suffering unnecessarily for the lawyer’s negligence when the client has not ignored citation but has in fact hired a lawyer to handle the matter and the lawyer has failed to answer timely. Lamb v. Lamb, 430 So.2d 51, 53 (La.1983), did so, noting
“the general policy consideration ... that every litigant should be allowed his day in court. In Hardy v. Kidder, [292 So.2d 575 (La.1973),] for example, we reversed the trial court’s denial of a new trial application which had been timely filed after a preliminary default was confirmed ... where the failure to plead the defense was the result of his attorney’s neglect rather than the client’s fault.”
Lamb and similar cases have, however, contained the added circumstance of a specifically alleged defense on the merits that was not pleaded exclusively because of the lawyer’s fault. Here, the motion for new trial averred that defendants “have several valid defenses to the plaintiff’s demand” but did not specify them. At the hearing on the motion, as in the application to this court for writs, no explanation of the nature of the alleged defenses was given.
This case is unusual in that, although as between themselves the son is the real principal debtor and the solidarily liable father is “considered only as his secu-rit[y],” C.C. 2106 (1870), the original judgment must be annulled as to the son yet not as to the father. (On the other hand, because he was solidarily liable, the father could have been sued alone and cast in judgment alone from the start.) It is conceivable that the son might defeat the claim while the father remains liable, in which ease a student of solidarity, surety-ship and indemnity might hypothesize a variety of consequences. That possibility, though conceivable, has not been made to appear likely by any specific allegation of a defense on the merits, however.
We therefore conclude that, in the absence of factual allegations suggesting that indeed the father is suffering injustice for the attorney’s negligence, the invalid service on the son and his timely-hired lawyer’s exclusive fault for the father’s failure to answer do not justify reversing the trial judge’s denial of new trial to the father after default judgment.
The deficiency judgment is annulled as to Keith A. Robert but the rulings complained of are otherwise affirmed.