LOBRANO, Judge.
Renee Kutcher, formally Renee Bouchat (Bouchat), appeals the granting of a new trial by the trial court on its own motion, as well as the court’s quantum and comparative negligence findings after the new trial.
Although six assignments of error are asserted, the dispositive issues for this court’s determination are as follows:
1) Whether the trial court abused its discretion in granting a new trial on its own motion; and
2) Whether the trial court committed manifest error in its factual findings on quantum and comparative negligence.
FACTS:
On May 17, 1986, at the intersection of Magazine Street and Jefferson Avenue in New Orleans, Bouchat’s Volkswagon Rabbit collided with an AMC Spirit owned by Evelina Pipe (Pipe) and driven by Charles Harold (Harold). Bouchat was driving down Magazine Street, proceeding straight through the intersection. Harold was travelling in the opposite direction on Magazine Street, attempting to make a left turn onto Jefferson Avenue. The accident occurred so suddenly and unexpectedly that neither Bouchat nor Harold could recall exactly how the collision occurred.
After colliding, Bouchat’s automobile proceeded through the intersection, veered right and struck a corner newspaper vending machine. Harold’s car was knocked backwards a distance estimated at between 6 and 15 feet, remaining in its lane of travel on Magazine Street.
Harold and Pipe filed a petition for damages against Bouchat on November 20, 1986. On March 25, 1987, Bouchat filed a reeonventional demand against Harold and Pipe, claiming she had suffered a neck injury in the accident. Bouchat’s reconven-tional demand added a claim against her uninsured motorist carrier, Aetna Casualty and Surety Company (Aetna).
Trial was held on October 31, 1989. Sitting as trier of fact, the trial judge heard lengthy testimony from Bouchat, three doc *159 tors,[1] and Bouchat’s husband. Harold, though subpoenaed for trial, failed to appear. After Bouchat rested her case, Aet-na moved for dismissal on the grounds that Bouchat had failed to prove that Harold[2] was uninsured at the time of the accident. Faced with this unexpected move, and recognizing that counsel for Aetna was technically correct, the trial judge decided that “the way to handle it is to let you [Bouchat] brief it on the motion for new trial.” The trial judge made it clear that he considered the issue serious enough to require briefing, and indicated that he would likely grant a new trial. “I don’t like to see injustice done,” said the trial judge at the conclusion of trial.
Rather than file a motion for new trial as the trial judge had suggested, on November 9, 1989 Bouchat submitted a motion to “Reopen for the Production of Additional Evidence” as to the uninsured status of Harold.
On November 21, 1989, the trial judge signed a judgment awarding Bouchat $150,000 in general and $2,957.83 in special damages against Harold. The judgment, however, dismissed the uninsured motorist claim against Aetna with prejudice. On November 28, 1989 Bouchat filed a motion for new trial as to the uninsured status of Harold, and alternatively as to all issues.
On December 1, 1989, the court vacated its November 21, 1989 judgment, and, on its own motion, granted a new trial on the issues of Bouchat’s damages and her comparative negligence. On January 9, 1990, the trial judge assigned reasons for granting a new trial. The court expressed concern with the turn the proceedings had taken following Aetna’s surprise move at the trial’s conclusion, as well as the need for a new trial on the issues of quantum and comparative negligence. The court questioned the reasonableness of its initial $150,000.00 award. In addition Bouchat’s request for a new trial on the uninsured status of Harold was granted.[3]
The new trial commenced on March 13, 1990. On that date Evelina Pipe, the owner of the car Harold was driving, testified that the vehicle was not insured on the day of the accident. In addition, Aetna introduced into evidence a medical report from Dr. Claude S. Williams wherein he stated that, after examination of Bouchat’s CAT scan and MRI, he could not identify definite disc herniation. He opined that the discs were not necessarily abnormal. Bouchat introduced the report of Dr. April who performed the MRI and found probable small posterior protrusions at C5-6 and C6-7. Following the failure of either party to produce Harold, and at the court’s insistence, he appeared on March 16, 1990 and testified, giving his version of how the accident occurred.[4]
Judgment was rendered on March 27, 1990. The court found that the collision occurred at “precisely the midline of Magazine Street.” Negligence was assessed 50% to Harold and 50% to Bouchat. Aetna was found liable to Bouchat under the uninsured motorist provisions of her policy because both Pipe and Harold were uninsured at the time of the accident. The court found it “more probable than not” that Bouchat’s injury was the result of a combination of Bouchat’s earlier back problems, the May 17, 1986 accident, and a separate automobile accident which occurred in 1988. As a result, Bouchat was awarded general damages in the amount of $30,000.00, reduced by her 50% negligence.
GRANTING OF NEW TRIAL ON COURT’S OWN MOTION:
Bouchat argues that the trial court erred and abused its discretion in ordering a new trial on its own motion on the issues *160 of quantum and comparative negligence. We do not agree.
Under La.C.C.P. Art. 1971, “[a] new trial may be granted ... by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only.” In Lamb v. Lamb, 430 So.2d 51 (La. 1983), the Louisiana Supreme Court stated that, “[w]hen the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered. We have recognized that the court has much discretion regarding this determination. However, this court will not hesitate to set aside the ruling of the trial judge in a case of manifest abuse.” Id. at 53. Although Lamb involved review of the trial court’s denial of a motion for new trial, the same standard is applicable to the grant of a new trial.
After review of the transcript and the trial court’s January 9, 1990 reasons, we conclude that the court acted well within its discretion in granting a new trial ex parte. It is clear that the trial judge was confronted with an unexpected move at the conclusion of the initial trial which effectively removed Bouchat’s uninsured motorist carrier, Aetna, from the case. Commenting on Aetna’s motion to dismiss, the trial judge wrote, “[i]n frustration, this Court rendered a judgment against Mr. Harold for $150,000.00 plus special damages and dismissed the claims of the other parties.” The court went on to explain why granting a new trial without retrying quantum and comparative negligence would have resulted in a miscarriage of justice. “The Court is of the opinion that the judgment against Mr. Harold is or would be uncollectible, if not unconscionable. Thus this ease created false expectations in the mind of Ms. Bouc-hat. This case at best is not worth anything close to $150,000 ... Accordingly, the Court on its own motion granted a new trial limited to the issue of quantum and the contributory negligence of Ms. Bouc-hat.” (emphasis original).
“[W]hen the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered.” Lamb, at 53. We cannot say that there was a manifest abuse of discretion by the trial court. Bouchat argues that the new trial was nothing more than a re-evaluation of the evidence adduced at the first trial, and was, in effect, the trial court’s modification of the substance of the original judgment, which the court is prohibited from doing after a judgment is rendered. For two reasons, we disagree. First, noted above, additional evidence was introduced at the new trial. More important, however, is the fact that Code of Civil Procedure Article 1971 permits a new trial for reargument only.
Additionally Bouchat asserts that the court’s decision to grant a new trial was unduly influenced by the opinion of a third party concerning Dr. Watermeier allegedly made to the trial judge outside of the record. In support of this allegation, Bouc-hat’s attorney filed into the record his own affidavit wherein he states the trial judge made a remark in his presence that he would “reevaluate the testimony of the treating physician because of disparaging remarks made ... by a third party_” There is nothing else in the record to suggest bias by the trial judge. We find no merit in this argument, and hold that there was no error in the granting of a new trial.
TRIAL COURT’S FINDINGS OF FACT:
Bouchat argues that the court committed manifest error in the following findings of fact: (1) that Bouchat was 50% comparatively negligent; (2) that Bouchat’s injuries were caused in part by a prior medical condition and a separate automobile accident; and (3) that Bouchat was entitled to only $30,000 in general damages. For the following reasons we disagree.
CONTRIBUTORY NEGLIGENCE:
After the new trial Bouchat was found to be 50% negligent. This assignment of negligence is based primarily on the position of the cars when the accident occurred. The court found that “the accident happened precisely at the midline of Magazine Street and that both [Bouchat] and Harold were precisely at the midline, both being too close to same. If Harold’s *161 car was at any angle in order to make a turn, such angle was minimal (less than 15 [degrees] by estimate). At the moment of impact, Harold was stopped.” Testimony at trial and pictures of the vehicles after collision support these findings of fact.
Harold’s pertinent testimony is as follows:
“Harold: ... I was going to make a left hand turn onto Jefferson Avenue heading toward Claiborne. I could not make the turn because the traffic was there. The next thing I knew it was bam, I was hit, knocked me backwards.
Counsel: Did you see the other car that hit your car?
Harold: Not at first, I did not see it coming at first, not until after I had turned around. It was almost in the drug store or something across the street.
Counsel: When the impact ... occurred what lane of traffic was your vehicle in? Harold: It was in the right hand lane going ... towards Canal.
Counsel: Had you crossed over the center line when the accident occurred? Harold: No.”
Bouchat’s pertinent testimony is as follows:
“Bouchat: I remember oncoming traffic, but there was no turn signal on and I had nothing — no visual contact that anyone was making a turn or was going to be coming over to this side (indicating)
Counsel: Renee, at all times were you headed in a straight direction?
Bouchat: Oh, yes, until I ended up being pushed over.
s|t * * * * *
Counsel: At all times did you have the right-of-way and were you going straight forward?
Bouchat: Oh, absolutely.
* Sit * sic s|e s(e
Counsel: Did you receive any warning from anybody, including Mr. Harold, that he was going to run in — turn in front of you?
Bouchat: Absolutely not....
******
Opposing Counsel: ... you said that Mr. Harold was attempting to make a turn, is that correct?
Bouchat: I don’t know that he was attempting to do anything. As far as I was concerned, he was supposed to be coming past me.
Opposing Counsel: But you have no idea when the accident happened whether or not he was going straight or attempting to make a turn?
Bouchat: It was my impression of oncoming traffic, since he gave me no signal of turning, that he was not going to make a turn, that he would continue straight.
Opposing Counsel: In fact, the only time you ever saw him before the impact was when he was headed straight down Magazine Street?
Bouchat: Correct.”
Basically, both parties claim to have been in the proper lane of traffic and are unable to recall what happened at the time of collision.
The only other pertinent evidence is a set of photographs taken by Bouchat’s husband showing the condition of the automobiles after the accident. Those photographs support the court’s conclusion “that the strike to the Harold vehicle was on the most left point of the left portion of the front bumper and the left side up to the driver’s door. If Harold had been turned more to the left or had entered [Bouchat’s] lane, Bouchat would have struck more of the front bumper.”
We note Bouchat’s argument with respect to Harold’s credibility. This court recently reiterated the long standing rule of appellate review that “determinations of credibility of witnesses are solely within the discretion of the trier of fact, and will not be reversed absent an abuse of that discretion.” L & R Leasing Co. v. Allstate Ins. Co., 561 So.2d 1011, 1014 (La.App. 4th Cir.1990). Harold said nothing to contradict Bouchat’s version of how the accident occurred. We see no reason to question *162 the trial court’s evaluation of his credibility.
CAUSE OF THE INJURY:
Although the trial judge acknowledged that Bouchat did have a herniation of the disc, he concluded that her injuries were caused by a combination of the accident in question, a prior medical condition, and a separate automobile accident. We find no error in this conclusion.
Dr. Watermeier testified on Bouchat’s behalf. He saw plaintiff for the first time on January 13, 1989. The trial judge reasoned that “[t]o a large degree, the cross examination of Dr. Watermeier minimized the effectiveness of his testimony”: We quote the pertinent testimony on cross.
“Counsel for Aetna: Would it also be important to you, Doctor, that prior to this automobile accident she had a history of chiropractic treatments, not just a couple of visits, chiropractic treatment going back throughout the 1970’s and throughout the 1980’s, in fact, chiropractic treatment in February of 1986 for neck and thoracic pain caused by moving and holding her children at parades, which has already been pointed out by her chiropractor prior to today?”
Dr. Watermeier: Yes, it would be. Counsel for Aetna: But you don’t know about any of that?
Dr. Watermeier: That’s correct.
Counsel for Aetna: You don’t have any knowledge of her being in a serious automobile accident in August of 1988, do you?
Dr. Watermeier: That’s correct.
Counsel for Aetna: None of this has been told to you, the only thing is three years later I was in an automobile accident in May of 1986 Doctor, can you relate it to that? That’s the only information you have?
Dr. Watermeier: That’s correct.”
In addition the record contains considerable evidence indicating that Bouchat has been plagued by a history of back problems. On cross examination Dr. Richard Hages was referred to the patient form filled out by Bouchat on June 16, 1983, the date of her initial visit. He testified that Bouchat complained of lower back problems, aching in the shoulders, pelvis and neck pain. Bouchat described the problems to Dr. Hages as chronic. She also advised him that she had sustained some bad falls, as well as automobile accidents, horse injuries and diving board injuries. For a period of five or six months Dr. Hages treated her for upper cervical and thoracic problems.
In addition Bouchat’s testimony reveals the following:
“Q. In fact, you had problems with your neck and your shoulders going back many years before this accident for which you underwent chiropractic treatment, correct?
A. Yes, I have.
Q. In fact, going into the seventies, you were treated by chiropractors in New York and subsequently chiropractors here in New Orleans, Louisiana, names you couldn’t recall before you saw Dr. Hagues in 1983?
A. Yes. It was more for my lower back.
Q. But you were treated for your neck and thoracic spine, you heard Dr. Hagues’ testimony, in ’83, ’84, and in February of ’86, which is only a couple of months before our automobile accident?
A. Right.”
Bouchat also testified about a 1988 automobile accident as follows: “I was hit by a drunk driver ... There was no injury to anybody, but my car and my younger son, because we were all wearing seatbelts and we were stopped, and my little boy hurt his shoulder, but the man that hit us actually hit the front of my car and bent the frame of my car five inches.”
We cannot say that the court was clearly wrong in finding that “[i]t is more probable than not that the herniation is the result of a combination of [Bouchat’s] earlier problems, this accident, and a subsequent accident.”
QUANTUM:
The review of a damage award requires, first, a determination of whether *163 there was an abuse of discretion by the trial court and then a resort to prior awards. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Weaver v. Siegling, 569 So.2d 97 (La.App. 4th Cir.1990), writ denied 572 So.2d 67 (La.1991).
The trial court concluded that “I note a serious question as to whether [Bouchat] suffered any damages to her person in the accident of 17 May, 1986.” After review of the evidence, in particular the evidence as to causation, we cannot say the trial court abused its discretion in awarding $30,000.00 in general damages.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.

. Dr. Hages, a chiropractor, and Drs. Horn and Watermeier, orthopedists, all testified.

. There was no evidence introduced to show that either Harold or Pipe’s vehicle were insured.

. In its reasons the judge emphasized the need to "assuage the emotions of this case.”

.The record indicates the trial court's frustration with both parties’ failure to procure Harold's testimony. Suffice it to say after review of the testimony we find no error in holding the case open.