675 So.2d 736 (1996)
Ernest M. CARTER and Brenda D. Carter
v.
PATTERSON INSURANCE COMPANY and Pierre and Associates, Inc.
No. 96-CA-0111.
Court of Appeal of Louisiana, Fourth Circuit.
May 22, 1996.
*737 James L. Trinchard, Trinchard & Trinchard, New Orleans, for Appellee.
Ermence Debose-Parent, New Orleans, for Appellants.
Before LOBRANO, LANDRIEU and MURRAY, JJ.
LOBRANO, Judge.
Plaintiffs, Ernest and Brenda Carter, appeal the trial court's grant of defendant, Patterson Insurance Company's motion for involuntary dismissal which dismissed their lawsuit for damages pursuant to an insurance policy issued by Patterson. The trial court upheld the validity of a named driver exclusion in Patterson's policy which precluded coverage for the accident at issue. The facts are as follows.
At the request of Brenda Carter, through her insurance agency, Pierre and Associates (Pierre), Patterson issued its policy No. 7L0052517 which provided liability coverage on a 1975 Ford LTD and a 1978 Plymouth Trailblazer owned by plaintiffs. At the time Mrs. Carter applied for the insurance, Pierre quoted her a premium which provided coverage for her daughter, Shantell, and a lower premium for a policy which excluded coverage for her daughter. Mrs. Carter testified that because her daughter did not have a driver's license at that time, she elected to exclude Shantell from coverage and executed an exclusion endorsement to that effect. Although Mr. Carter disputes the authenticity of his signature on the copy of the exclusion form dated February 11, 1994, he admits that on March 22, 1994 he received and signed another exclusion form excluding coverage of his daughter, effective February 11th.[1]
On April 11, 1994 the Carters purchased a 1994 Mercury Topaz. Mrs. Carter contacted Pierre and requested "full coverage" for the Topaz and cancellation of coverage on the Plymouth. Although the liability coverage remained the same, Patterson increased coverage *738 on the Carter's policy to include UM, medical payment, collision and comprehensive coverage.[2]
Shantell Carter obtained her driver's license on June 1, 1994. Plaintiffs did not notify Patterson or Pierre of this fact but assumed that Shantell was covered when they requested "full coverage" for the new Topaz in April. Mrs. Carter testified that when she requested coverage for the new Topaz she was not asked about the existing exclusion for her daughter. Melvin Pierre of the Pierre Agency, however testified that he told Mrs. Carter, upon her initial application in February, that the exclusion of Shantell was for all cars insured under the policy.
On August 1, 1994 Shantell was involved in an accident while driving the Topaz. Patterson denied coverage for the Topaz's damages and Shantell's medicals, as well as the property damage claim of the parked vehicle Shantell hit.[3] This suit followed.
Initially, a default judgment was rendered against Patterson awarding plaintiffs their property loss, medicals, rental fees, attorney fees and court costs. However, Patterson timely filed a motion for new trial asserting that the judgment was contrary to the law. In particular, Patterson relied on the named driver exclusion executed by the plaintiffs. The trial court granted a new trial, and after hearing plaintiff's evidence, dismissed their lawsuit on Patterson's motion for involuntary dismissal. The court reasoned that it was undisputed that the plaintiffs excluded Shantell from coverage when the policy was purchased and never notified Pierre when Shantell obtained her driver's license. The court opined that when the Topaz was added to the policy and the Plymouth dropped, even though coverage was increased, there was no new policy issued and thus the exclusion endorsement for Shantell remained in effect. The court rejected, as having no legal basis, plaintiff's assumption that once Shantell obtained a driver's license she would be covered under the policy.
Plaintiffs appeal that judgment asserting various arguments directed to the liability of Patterson on the coverage issue. Although the trial court judgment of October 5th dismisses all defendants, plaintiffs have presented no argument concerning Pierre's liability nor has Pierre filed a brief in this court.
First, plaintiffs complain that the trial court erred in setting aside their default judgment and granting a new trial. We find no merit in this argument.
Code of Civil Procedure article 1972 mandates that a new trial be granted if the judgment is contrary to the law and evidence, while article 1973 provides the court with the discretion to grant a new trial "if there is good ground therefor". If a trial judge is convinced that the judgment would result in a miscarriage of justice, a new trial should be ordered. Lamb v. Lamb, 430 So.2d 51, 53 (La.1983). With respect to a new trial motion filed subsequent to the confirmation of a default judgment, the courts are particularly cautious in examining the circumstances surrounding the judgment because of the general policy consideration "that every litigant should be allowed his day in court." Id.
Plaintiffs' argument centers around the fact that Patterson offered no reasons for failing to appear and timely answer. While we recognize that the mere failure to answer, without more, is not sufficient grounds for a new trial, Lamb v. Lamb, supra, Patterson asserted that the default judgment exceeded the limits for medical payments and did not consider the deductible on the collision loss, and also presented documentation which strongly suggested that no coverage existed for Shantell's accident. Considering all of those factors, it would have been a miscarriage of justice for the trial court not to grant a new trial. There certainly was no abuse of discretion in the decision to grant a new trial.
*739 Next plaintiffs argue that the trial court's reasoning, which concluded that plaintiffs failed to notify Patterson of Shantell's driver's license, was irrelevant to the case and is reversible error. By this argument plaintiffs are really asserting that they had no obligation to tell Patterson when Shantell obtained her license because no one at Pierre or Patterson told them they had to do so.
Absent any contractual or statutory authority, Patterson had no obligation to advise plaintiffs concerning any notification about Shantell obtaining her driver's license. Furthermore, it certainly was not incumbent on Patterson to keep abreast of Shantell's driving status. There was no error in the trial court's rationale that plaintiffs' failure to notify Patterson relieved Patterson of any obligation to include Shantell within the policy's coverage.
Plaintiffs next argue that a new policy was created when the Topaz was added, and thus a new named driver exclusion was required. In support, plaintiffs rely, by analogy, on the concurring opinion in Francis v. U.S. Fidelity & Guaranty Co., 94-721 (La. App. 3rd Cir. 3/8/95) 653 So.2d 45, writ denied, 95-1305 (La. 9/15/95), 660 So.2d 459 and Thibodeaux v. Champion Insurance Co., 614 So.2d 232 (La.App. 3rd Cir.1993), cited in that concurrence.
The issue in Francis was whether the "miss and run" exclusion in USF & G's uninsured motorist coverage violated public policy. The court found that it did and held that the policy provided UM coverage. The concurring judge agreed with the majority result but for the reason that the vehicle involved in the accident was an additional vehicle added to an existing policy and thus a separate rejection of UM coverage was required. Relying on Thibodeaux, supra, the concurring judge concluded that "the addition of another vehicle to an existing policy amounts to an increase in the policy's coverage and has the effect of creating a new policy...."
By analogy plaintiffs argue that when the Topaz was added to their policy, a new policy was created which required a new named driver exclusion.
Thibodeaux is distinguishable, both legally and factually, from the instant case. Legally, R.S. 22:1406(D)(1)(a)(i) provides that the insured's initial written rejection of UM coverage is applicable to a renewal, reinstatement or substitute policy. There are no statutory requirements regarding the applicability of named driver exclusions in instances of renewal or substitute policies. Factually, the Thibodeaux cased involved the addition of a vehicle to the existing policy. In the context of UM coverage, the court held that a new policy was created. In the instant case, the Topaz was substituted for the Plymouth. In Allen v. State Farm Mutual Automobile Ins. Co., 617 So.2d 1308 (La.App. 3rd Cir.1993) the court relied on the distinction between an additional vehicle versus a substitute vehicle in holding that it was unnecessary for the insured to execute a new UM rejection/selection form where no additional vehicles were added to the policy.
In the instant case there was no added vehicle, only a substitution of vehicles. We hold that no new insurance policy was created and Patterson was not required to obtain another named driver exclusion form. This result is consistent with the holdings of the UM cases relied on by plaintiffs. The named driver exclusion applied to all vehicles covered under Patterson's policy. That policy did not cease, nor was a new policy created, when the Topaz was substituted for the Trailblazer. See, Moore v. Young, 490 So.2d 519 (La.App. 4th Cir.1986) where we held the policy to be a "renewal" rather than new policy. Compare, Mercola v. State Farm Mutual Automobile Insurance Co., 588 So.2d 163 (La.App. 4th Cir.1991). We find no merit in this argument.
Next, plaintiffs question the authenticity of Ernest Carter's signature on the exclusion endorsement form and application for insurance both dated February 11, 1994. Plaintiffs assert that Ernest Carter could not have signed that document because on March 22, 1994, he was sent another form by mail which requested his signature. Ernest Carter does admit that he signed the form sent on March 22, 1994, which shows an effective date of February 11, 1994. Plaintiffs also argue that Patterson should be required to *740 produce the documents containing the original signature of Ernest Carter before it can rely on the exclusion since only copies were produced at trial. Fraud and forgery are argued as grounds for vitiating the exclusion.
The trial court resolved plaintiffs' argument on those issues by finding that both plaintiffs admitted executing an exclusion of Shantell from coverage effective February 11, 1994. The record supports that finding. Plaintiffs admit applying for the insurance, executing the exclusion endorsement, (albeit Mr. Carter signed it in March) and requested that the Topaz be substituted for the Plymouth.[4] Considering these facts, we find irrelevant plaintiffs' concerns about the authenticity of Ernest Carter's signature. Even though it is undisputed that he was not present in Pierre's office on February 11th and could not have signed the application and exclusion form at that time, both plaintiffs admit that Ernest Carter did in fact subsequently sign the documents in March.[5] Plaintiffs do not deny that they agreed to exclude Shantell from coverage, and they admit that they failed to notify Pierre when Shantell obtained her license.
Plaintiffs' real complaint is that they did not intend to exclude their daughter from coverage on the Topaz and they assumed she would be covered when the Topaz was added to the policy. Unfortunately they had no real basis in fact or law for that assumption. Melvin Pierre testified that at the time of the initial application in February and when the Topaz was added in April, in order to give plaintiffs a quote on the premiums, he explained the different amounts with and without coverage for Shantell. Furthermore, the exclusion endorsement form says it applies to the policy and all vehicles covered by it, not just one particular vehicle. Finally, plaintiffs paid the lower premium based on the exclusion. Thus, because there is no support for plaintiffs' erroneous assumptions and because they both admit executing the exclusion endorsement, their argument concerning authenticity of Mr. Carter's signature on the original application is really irrelevant to the legal issue of exclusion of coverage.
Citing La.R.S. 32:900(B)(2), which requires omnibus coverage in all liability policies, plaintiffs next argue that the named driver exclusion which they executed violates public policy and has no effect. Prior to the adoption of Act 979 in 1992 plaintiffs' argument would have merit. However Act 979 amended R.S. 32:900 by adding Section L which provides:
"Notwithstanding the provisions of paragraph B(2) of this Section, an insurer and an insured may by written agreement exclude from coverage any named person who is a resident of the same household as the named insured."
Thus, we have no doubt that the 1992 amendment now permits an agreement between the insurer and insured excluding coverage of a particular named person who is a member of the insured's household. See, Threats v. Derousselle, 93-1047 (La.App. 3rd Cir. 4/6/94), 636 So.2d 276. Plaintiffs' policy is governed by the amendment since it was purchased in February of 1994. Edwards v. Automotive Casualty Insurance Co., 92-151 (La.App. 3rd Cir. 3/2/94), 634 So.2d 1278, writ denied, 94-0804 (La. 5/6/94), 637 So.2d 1055, relied on by plaintiffs, is not relevant since the policy in that case was issued prior to Act 979. In fact, Act 979 is not even mentioned in the opinion.
The legislature has declared that excluding a named driver, who is a member of the insured's household, does not violate the public policy which mandates omnibus liability coverage. We cannot overturn that legislative declaration.
*741 Finally, plaintiffs argue that because the Topaz's lienholder did not agree to the exclusion of Shantell from coverage, its lack of consent somehow vitiates that exclusion. No authority is cited in support of that argument. Perhaps if the lienholder were a party to this litigation and had sustained a loss of its security interest, the argument would warrant consideration. However, plaintiffs cannot assert the lienholder's right to nullify an exclusion endorsement they admittedly requested and executed. Simply put, that argument is one the lienholder may have, but not plaintiffs.
For the reasons assigned, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] Apparently a similar request had been made by Patterson on March 11, 1994 but had not been returned by the Carters. Thus another request was sent on March 22.
[2] Because both vehicles were covered by the same policy, Melvin Pierre of the Pierre Agency testified that the increased coverage was to apply to the Ford LTD as well.
[3] Dan Ludwig intervened in these proceeding seeking recovery of his property damages. He did not appeal Patterson's dismissal, however his claim against the Carters apparently is still pending in district court.
[4] Reviewing the testimony of both Brenda and Ernest Carter it is difficult to understand whether, in some instances, Ernest Carter's signature is contested. However, it is clear that both the application and exclusion endorsement were signed by him sometime in March, with an effective date of February 11, 1994.
[5] The testimony of Melvin Pierre, as well as the documents themselves, suggests that when Pierre and/or Patterson realized that Ernest Carter did not sign the application or the exclusion, copies were sent for his signature. The documents which are signed by him have "XXX" in the space next to his signature which is consistent with Pierre's testimony about his written request for Mr. Carter's signature.