768 So.2d 812 (2000)
Garry O. HICKMAN, Plaintiff-Appellee,
v.
WM. WRIGLEY, JR. CO., INC., et al., Defendants-Appellants.
No. 33,896-CA.
Court of Appeal of Louisiana, Second Circuit.
October 4, 2000.
*814 Lunn, Irion, Salley, Carlisle & Gardner by Gerald M. Johnson, Jr., Shreveport, Counsel for Appellants.
Bethard & Bethard by Robert E. Bethard, Coushatta, Counsel for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
The defendant-appellant, the William Wrigley, Jr. Co., ("Wrigley"), appeals a judgment of default rendered by the trial court in favor of the plaintiff-appellee, Garry O. Hickman in an action for damages resulting from injuries sustained when the plaintiff chewed a stick of Big Red brand gum which allegedly contained a small metal screw. The trial court confirmed Hickman's preliminary default on September 16, 1999. Wrigley filed a motion for a new trial which was denied by the trial court on November 8, 1999. For the reasons that follow, we affirm the trial court's judgment.

FACTS
On February 14, 1999, Hickman opened a pack of Big Red gum which is manufactured by the defendant, Wrigley. The gum was purchased by Hickman at a grocery store on the evening of February 13, 1999. Hickman unwrapped the package, which was still sealed, and put two pieces of the gum into his mouth.
Hickman provided the following description of the events that occurred after he began to chew the gum:
[A]fter I started chewing the gum I bit down on it, uh, when I bit down on it the tooth exploded in my mouth. I begin to get all of this stuff out of my mouth, tooth fragments all over my mouth and everything. The screw turned up and stuck up in the top of my gum. I had to pull it out which caused me a lot of pain and all and everything and it was very uncomfortable there for a while.
Hickman's gums stayed sore for several weeks and he sought treatment from Dr. Conly on February 18, 1999. One of Hickman's bottom teeth was fragmented. Those fragments chipped his top front teeth. Dr. Conly recommended that Hickman have surgery, which would total approximately $905.00, to remove the fractured tooth. However, at the time of the September 1999 default hearing, Hickman had been unable to do so because he was unable to afford the surgery.
Hickman filed suit in this matter on August 10, 1999. He served Wrigley through their agent for service of process, CT Corporation, on August 17, 1999. A preliminary default was entered against Wrigley on September 9, 1999. This default was confirmed, after a hearing, on September 16, 1999. Following this hearing, at which Hickman and his attorney testified, the trial court awarded Hickman general damages in the amount of $7,000.00 and $1,161.50 in special damages. The special damages included past medical expenses, future medical expenses, and one day of lost wages.
On September 24, 1999, Wrigley filed a motion for a new trial. This motion was set for hearing on November 8, 1999. At that hearing, Wrigley argued that Hickman had not proven his case under the substantive law of products liability. Wrigley further argued that it would be a *815 miscarriage of justice to allow this judgment to stand. The trial court rejected both of these arguments and denied Wrigley's motion for a new trial. This appeal followed.

DISCUSSION
Confirmation of a default judgment for a delictual obligation is contained in La. C.C.P. art. 1702 which provides in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
B. (2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
A "prima facie case" is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied. Carroll v. Coleman, 27,861 (La.App.2d Cir.01/24/96), 666 So.2d 1264; Howard v. A & M Construction Company, 93-1013 (La.App. 1st Cir.04/29/94), 637 So.2d 575; C.L. Morris v. Southern American Insurance Company, 550 So.2d 828 (La.App. 2d Cir.1989). In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at a trial on the merits. Rhodes v. All Star Ford, Inc., 599 So.2d 812 (La.App. 1st Cir.1992); C.L. Morris v. Southern American Insurance Company, supra.
In reviewing a default judgment, an appellate court is restricted to a determination of the sufficiency of the evidence offered in support of the judgment. The presumption that the default judgment was rendered upon sufficient evidence and is correct does not apply where, as in the present case, the testimony is transcribed and contained in the record. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment was based was sufficient and competent. Carroll, supra; Meshell v. Russell, 589 So.2d 86 (La. App. 2d Cir.1991).
By assignment of error, Wrigley argues that the trial court should have granted its motion for a new trial. La. C.C.P. art. 1973 provides in pertinent part:
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
Wrigley does not dispute the fact that its agent for service of process, CT Corporation, was validly served with Hickman's petition on August 17, 1999. Wrigley does not dispute that it failed to answer within the time limitation established by law. Instead, Wrigley urges that this court should reverse the trial court's grant of a default judgment because human error, i.e., miscommunication between Wrigley and CT Corporation, deprived Wrigley of its chance to defend against this lawsuit.
In applying La. C.C.P. art. 1973, the facts and circumstances of each individual case must be examined. When an examination of the facts convinces the trial judge that the judgment would result in a miscarriage of justice, a new trial should be ordered. Lamb v. Lamb, 430 So.2d 51 (La.1983). Although the trial court has much discretion in determining if a new trial is warranted, an appellate court can set aside the ruling of the trial judge in a case of manifest abuse of that discretion. Lamb, supra; Hardy v. Kidder, 292 So.2d 575 (La.1973); Meshell v. Russell, supra. Due to the general policy consideration, *816 weighing in the defendant's favor, that every litigant should be allowed his day in court, appellate courts must be particularly cautious in examining the circumstances underlying a properly confirmed default judgment when a timely motion for new trial is denied thereafter. Lamb, supra; Meshell, supra.
In considering the circumstances surrounding a properly confirmed default judgment, the mere failure to file an answer, without more, is insufficient grounds to grant a new trial. Lamb, supra; De-Frances v. Gauthier, 220 La. 145, 55 So.2d 896 (1951). Wrigley failed to file an answer in this matter. In defense of this action, Wrigley has no argument other than mere human error. Mere human error was not enough to convince the trial court that a miscarriage of justice would result if a new trial was not granted. We do not find that the trial court abused its discretion in failing to grant a new trial on this basis. This assignment of error lacks merit.
By assignment of error, Wrigley argues that the trial court erred in failing to grant it a new trial on the basis of La. C.C.P. art. 1972, which provides in pertinent part:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Wrigley argues that the judgment is contrary to law and fact because Hickman failed to prove his case under the Louisiana Products Liability Act. Specifically, Wrigley urges that Hickman failed to prove, under La. R.S. 9:2800.54(C) and La. R.S. 9:2800.55, that the characteristic of the product, i.e., the gum, that rendered it unreasonably dangerous, i.e., the screw, existed at the time the product left the control of the manufacturer. La. R.S. 9:2800.55 provides in pertinent part:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.
The "foreign-natural" test is applicable to determine the liability of a seller of food where a substance in the food presents a potential danger to all persons. Simeon v. Doe, 618 So.2d 848 (La.1993).
Under the "foreign-natural test," if the harmful substance is foreign, the defendant is strictly liable, and the analysis stops. If the substance is natural to the food, then the negligence of the defendant must be determined. Simeon, supra. A natural substance has been held to include instances where the product does not undergo the manufacturing process and an object with the potential to cause injury remains in the product. An example of this type of situation is the pearl in a fried oyster. Simeon, supra. However, when a product undergoes the manufacturing process and is marketed as a particular type of product, a foreign substance is any substance not associated with that finished product. Thus, a "fish eye lens," although natural to a tuna fish, is not considered a "natural" object in a can of tuna meat. Simeon, supra. Likewise, a piece of bone is a "foreign" object in a manufactured boneless chicken breast.
Wrigley manufactured the gum, and the screw Hickman found in the gum clearly was a foreign substance. Certainly, a screw is not the type of object that would normally be associated with or found in a *817 piece of gum. Furthermore, a screw is the type of object that presents a potential danger to people who purchase chewing gum.
Hickman testified that he bought the gum in its original sealed wrapping and opened it himself. It was after he began to chew the gum that he sustained the injury to his teeth from the screw. A transcript of the default hearing was provided with this record. The trial court, who was able to examine both the gum and the screw, as well as Hickman's dental records, found Hickman's testimony credible. We cannot say, from a review of the record and the transcript provided with this record, that the trial court was incorrect in its determination that Hickman fulfilled his prima facie burden during the September 1999 default hearing in this matter. As such, this assignment of error also lacks merit.
Finally, by assignment of error, Wrigley argues that the trial court erred in failing to consider an affidavit from Kenneth Simpson, the corporate risk manager, at the hearing on the motion for a new trial. This affidavit does not contain any new evidence in this matter. It simply reiterates the fact that Wrigley and Hickman's attorneys attempted to negotiate a compromise short of filing suit but were unable to do so. It does not contain any additional explanation for Wrigley's failure to answer the lawsuit filed by Hickman. Because this Court finds that the trial court was correct in its decision to grant the default judgment and deny the motion for a new trial, we will not consider the correctness of the trial court's decision not to consider this affidavit. This assignment of error lacks merit.

CONCLUSION
For the reasons set forth above, we find no abuse of discretion in the trial court's decision to confirm a default judgment in favor of the plaintiff, Garry O. Hickman. Accordingly, we hereby affirm the trial court's judgment at the costs of William Wrigley, Jr. Co.
AFFIRMED.