COOKS, J.,
dissenting.
|⅞1 respectfully disagree with the majority’s decision to affirm the judgment of the trial court granting Defendants’ motion for summary judgment. I believe the trial court erred in finding Plaintiffs did not make a good faith effort in proceeding forward with the lawsuit and in finding that expert testimony at the summary judgment stage was necessary to defeat the Defendants’ motion.
As to the trial court’s finding that Plaintiffs did not make a good faith effort to proceed timely, I cannot ascertain from the record any blanket refusal by Plaintiffs’ counsel to provide expert testimony. Instead, it appears he was only apprehensive in agreeing to the time period set forth by the trial court to secure an expert. The record indicates the trial court was willing to allow Plaintiffs sixty days, or until June 1, 2008, to retain an expert. However, the trial court warned Plaintiffs’ counsel that if an expert was not secured within this sixty day period the case would be dismissed. Plaintiffs’ counsel maintained he could guarantee discovery would begin within that time frame, but stated he could not agree to a stipulated dismissal of the case if an expert was not secured within sixty days. Plaintiffs’ counsel requested a continuance until September, 2008, at which time he felt comfortable that an expert could be secured and the failure to do so would be at Plaintiffs’ peril.
Louisiana Code of Civil Procedure Article 966(C)(1) mandates that a motion 12for summary judgment should not be granted until “adequate discovery” has taken place. The court in Hubbard v. North Monroe Medical Center, 42,744 (La.App. 2 Cir.12/12/07), 973 So.2d 847, 849, writ denied, 08-0101 (La.3/7/08), 977 So.2d 907, noted that “[f]undamental fairness dictates that a party opposed to a motion for summary judgment must be given a reasonable opportunity for discovery before the motion is heard.”
It is true, the record indicated over two years elapsed from the time of the alleged act of malpractice to the grant of summary judgment. However, during that time Plaintiffs proceeded in proper person, and was unable to procure counsel until less than two months before the hearing on the pending motion for summary judgment. Defendants argue Plaintiffs would not agree to any time frame for the retention of experts. However, as stated earlier, that is not an accurate account. Plaintiffs’ counsel agreed that the case needed to proceed forward, and even agreed that he would answer the interrogatories within ten days. Despite this, the trial court found by refusing to agree to a stipulated sixty day dismissal period if an expert was not secured, Plaintiffs were “not making a good faith effort.”
*1212 Considering the circumstances, I believe a miscarriage of justice results by depriving Plaintiffs an opportunity to defend the summary judgment motion. Further, there is nothing in the record suggesting Plaintiffs did not make a good faith effort to secure legal representation prior to the filing of the summary judgment motion. The lapse of two months for retained counsel to depose and prepare for the pending motion was unreasonable. The trial judge’s insistence that he agree to an automatic dismissal within sixty days if an expert was not secured likewise was unreasonable and may have subjected counsel to a malpractice claim for acquiescing to a demand which may not be proeedurally warranted or legally required to establish causation |sin this case. “To allow the judgment below to stand would be to permit technical pleading rules to triumph over actual justice.” See Peters v. Hortman, 03-2597 (La.App. 1 Cir.10/29/04), 897 So.2d 131, quoting Lamb v. Lamb, 430 So.2d 51, 54 (La.1983).
Moreover, I do not agree with the majority and the trial court that expert testimony was essential in this case to establish causation on the part of Dr. Rainey. The MRP found that Dr. Rainey deviated from the appropriate standard of care. Nevertheless, it concluded there was no casual connection between his negligence and Plaintiffs’ injuries.
Apparently, the MRP believed since Mrs. Simien’s prognosis in the future was “excellent,” any resultant surgeries and medical complications from the recurrence of her cancer did not cause her any lasting harm. This is not the legal standard for determining causation in medical malpractice cases.
The Louisiana Supreme court in Pfiffner v. Correa, 94-924, 94-963, 94-992, p. 8 (La.10/17/94), 643 So.2d 1228, 1233, noted the “jurisprudence has also recognized that there are situations in which expert testimony is not necessary.” The Pfiffher court also commented “[tjhere are surely cases in which there are obvious unnecessary delays in treatment which constitute medical malpractice and where causation is evident” and “there no doubt are other instances in which the medical and factual issues are within the lay person’s ability to perceive as negligence and harmful through delay in treatment.” Id. at 1234.
In Browning v. West Calcasieu Cameron Hosp., 03-332 (La.App. 3 Cir. 11/12/03), 865 So.2d 795, writ denied, 03-3354 (La.2/13/04), 867 So.2d 691, this court reviewed the trial court’s denial of the defendant Hospital’s motion for summary judgment against the family of a patient who died subsequent to being treated by emergency medical technicians dispatched from the hospital. In that case, |4the hospital argued the plaintiffs were required to produce expert evidence to prove their medical malpractice claim. This court addressed that issue and wrote as follows:
Louisiana Revised Statutes 9:2794(B) gives any party to a suit the right to subpoena any physician, without his or her consent, for a deposition or testimony at trial to establish a health care provider’s standard of care. However, the statute is silent on the necessity of experts.
In Pfiffner v. Correa, our supreme court pointed out that while a majority of Louisiana courts have held that expert testimony is necessary, others have held that it is not absolutely required. The latter merely state that the standard of care and a breach of that standard are “best determined from the testimony of other experts in the field.” Therefore, such testimony is persuasive, but not always needed.
The jurisprudence has recognized various situations that do not necessitate *1213 medical malpractice plaintiffs to proffer expert evidence. The Pfiffner court listed a few examples:
Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a lay person can infer negligence. Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician’s fault. Likewise, where the defendant/physician testifies as to the standard of care and his breach thereof, or the alleged negligence consists of violating a statute and/or the hospital’s bylaws, (violation of LSA-R.S. 40:2113.4 which imposes a duty on a hospital to make emergency services available to all persons in the community without regard to income or insurance protection and hospital bylaws establishing duties for on-call physicians), expert testimony is also unnecessary to establish a malpractice claim.
[[Image here]]
The Plaintiffs must demonstrate by a preponderance of the evidence that a causal nexus exists between WCCH’s fault and Mrs. Browning’s death. The Pfiffner court noted that there are “cases in which there are obvious unnecessary delays in treatment which constitute medical malpractice and where causation is evident.”
| .^Furthermore, our supreme court recognized that the factfinder does not always need expert testimony to prove that a patient’s death is causally connected to an unreasonable delay in diagnosis and treatment of that patient.
Moreover, in Estate of Adams v. Home Health Care of Louisiana, 00-2494 (La.12/15/00), 775 So.2d 1064, the supreme court recently set aside an appellate court’s ruling granting a healthcare provider summary judgment when the plaintiff did not provide expert testimony to prove the defendant’s negligence (failing to call the attending doctor when the condition worsened) caused the damages (amputation). Our supreme court found such evidence to be unnecessary and, thus, explained:
Causationis an issue of fact that is generally decided at the trial on the merits. As the dissenting judge on the intermediate court noted, the admitted negligence clearly caused some damages, even if it merely hastened the amputation by one day. Plaintiffs damages for pain and suffering during the period of negligence, for aggravation of her medical condition, and for loss of any chance of saving her foot or of delaying the amputation is more appropriately decided by trial on the merits, even if plaintiffs case regarding the amount of damages is considerably weakened by the dearth of expert testimony.
[[Image here]]
We find the Brownings’ failure to proffer expert evidence to prove causation unimportant at this stage in the proceedings, even though, ultimately, its absence may weaken their case, since the delay in diagnosing and treating Mrs. Browning’s heart condition was surely a factor in bringing about her eventual demise. Clearly, she would *1214 have received immediate emergency medical care for her heart condition much sooner if she had agreed to transport.
Thus, we find that the Brownings did not need to present expert testimony to prove the existence of a causal connection between WCCH’s alleged negligence and Mrs. Browning’s death.
I, likewise, find there is a serious dispute as to the necessity for expert testimony to establish a causal connection between Dr. Rainey’s negligence and the injuries that resulted from the recurrence of Mrs. Sim-ien’s thyroid cancer. If anything, the facts in the present case are even stronger than those in Browning. The question in Browning concerned whether the emergency technicians (EMTs) dispatched from the defendant hospital deviated below the appropriate standard of care and if so, ^whether that contributed to the death of the patient. It was uncontradicted that even after calling for an ambulance the first time, the decedent in Browning refused transport to the hospital, which undeniably compromised her condition. However, the evidence also established the EMT’s clearly failed to adhere to the hospital's protocols, which was sufficient evidence of their negligence. Our court then concluded there were too many issues of genuine fact for summary judgment to be appropriate. In the present case, Dr. Rai-ney was found by the MRP to have deviated from the appropriate standard of care, the result of which caused Mrs. Simien’s cancer to remain undetected for a prolonged period of time. Mrs. Simien was forced to undergo a major surgical procedure, which included removal of multiple lymph nodes and the recurrent tumor. She then underwent extensive radiation therapy to help cure the cancer which had advanced substantially without detection. She maintained, as well, that she has endured other difficulties as a result of the recurrence which would not have occurred if discovered timely.
The trial coui’t granted summary judgment for two interrelated reasons: (1) it felt an expert witness was required for Plaintiffs to meet their burden of proving causation, and (2) Plaintiffs would not agree to the trial court’s mandate that it secure an expert witness within sixty days or have their case automatically dismissed. As stated above, I find this was one of those situations referenced in Pfijf-ner in which expert testimony may not be necessary. Submission of the full hospital records and reports of the treating physicians at M.D. Anderson may suffice to establish medical causation. Further, considering that Plaintiffs represented themselves throughout the MRP proceedings and only secured counsel less than two months before the summary judgment hearing, I find Plaintiffs were denied fundamental fairness when the trial court refused to allow further time for “adequate discovery” as required by La. Code |7Civ.P. art. 966(C). Finally, the MRP did not have for review the full records from M.D. Anderson when considering the causation question. Thus, for these reasons, and the fact the record shows questions of fact still exist as to the duration and severity of the complications endured by Mrs. Simien as a result of her undetected thyroid cancer recurrence, I believe the trial court erred in granting summary judgment in this case.