h CARAWAY, J.
The injured employee in this workers’ compensation action obtained a default judgment and was awarded temporary total disability benefits, penalties, and attorney fees. The employer appeals asserting that the medical records used as evidence at the confirmation hearing were not in the form required by La. R.S. 23:1316.1(C) so as to serve as proof of the disability. *1236 Finding merit in the employer’s argument, we reverse.

Facts

Lowe’s Home Improvement (“Lowe’s”) hired claimant, Paul Horne (“Horne”), in March 2000 as a sales associate in its Monroe store. On June 1, 2000, Horne was working in the warehouse, moving a roll of roofing felt from a high shelf, when he accidentally struck his elbow on a steel beam. He claims worker’s compensation benefits for this accident.
On August 7, 2000, Specialty Risk Services, apparently Lowe’s risk manager, mailed notice of the final cost report for Horne’s injury to the Office of Workers’ Compensation (“OWC”). The report indicated that Lowe’s paid Horne $400.02 in indemnity benefits and $450.02 in medical expenses through August 1, 2000 and then stopped paying benefits, because Horne was “working at equal or greater wage.”
On August 15, 2000, Horne filed a disputed claim for compensation with the OWC. On the “bona-fide dispute” section of the form, Horne checked only the box for wage benefits and wrote “7/31/00” in the blank to indicate when his wage benefits were terminated or reduced. Following mediation efforts, the OWC sent formal notice of Horne’s claim to Lowe’s |2on February 7, 2001, and according to OWC records, Lowe’s received notice of the claim on February 8, 2001. Lowe’s did not answer the proceedings.
On March 28, 2001, Horne filed a request for a preliminary default judgment with the OWC. On April 2, 2001, the Workers’ Compensation Judge (“WCJ”) entered the preliminary default in Horne’s favor. On April 30, 2001, the WCJ held a hearing to confirm the default, at which time Horne appeared and described his injury. He testified that he hit his elbow and shoulder on a steel beam and that, after the accident, his supervisor sent him to the doctor. Records show that Horne visited the OecuMed Clinic on June 2, 2000, where he was treated for a contusion to his right elbow, was prescribed Naprosyn, and was approved to return to light work, which is defined as “exerting up to 20 pounds of force occasionally.”
Horne further stated that after the accident, he “couldn’t move nothing with [his] right arm” and that in June 2000, he saw Dr. Douglas Brown, an orthopedist. Dr. Brown prescribed physical therapy for Horne. Dr. Brown’s records from July 12, 2000 show that he advised Horne to avoid using his arm until a follow-up appointment at the end of the month. Horne testified that on July 12, 2000, Lowe’s paid him $401. Horne did not work at all after July 12, 2000. Dr. Brown’s note dated July 24, 2000 indicates that Horne could resume “5 lbs. weight lifting restrictions” with his right arm.
Horne returned to Dr. Brown on July 31, 2000, and Dr. Brown released him to return to “light duty” work. The progress note for the July |a31 visit states: “Patient has not gone back to work despite instruction to do so. He says his shoulder and elbow still hurt.” Dr. Brown referred Horne for a functional capacity evaluation (“FCE”). Horne submitted to the FCE on August 4, 2000. Following the FCE, Dr. Brown’s progress note, dated August 22, 2000, states, in part: “He completed his FCE on 8/4/00 rating at a medium/heavy work level, lifting 100 pounds repetitively. There were some elements of invalidity using the right upper extremity and the patient appeared to ‘exaggerate his pain.’ ” Therefore, on August 22, Dr. Brown again released Horne to do light duty work “with lifting of 25 pounds which he is able to handle without difficulty.” The records indicate that Dr. Brown was of the opinion that Horne would reach maximum medical improvement by October 1, 2000.
*1237 Horne said that he returned to work at Lowe’s in early August 2000. He described his return, as follows:
They called me to come to work, which I knew—and I’m off. So I go into the store. I’m in the store all day just sitting behind the counter answering the phone. About 5 o’clock that evening they had me in the office with the store investigator. They was saying something about they had tapes showing me stealing out of the store, and they had a tape showing me on the workers’ comp—they said they had a tape showing where I was moving furniture.... All the time they were trying to get me to tell them what stuff that was going on in the store with other employees, which I knew nothing about. They was trying to bluff me to talk about other stuff, and I wasn’t going to do it.
Horne said that Lowe’s told him that he was suspended “until we contact you,” and that he has not heard anything from Lowe’s since that time.
Horne testified that his elbow continued to trouble him, that it swelled every day, and that because of pain in his arm, he could not grasp objects. | ¿Horne further testified that although he had been pursuing employment elsewhere since October 2000, he had not worked since his employment with Lowe’s.
The WCJ found that Horne injured himself on June 1, 2000, and that his injury left him unable to “perform duties” until October 1, 2000. The WCJ awarded Horne temporary total disability benefits for the four-month period. The WCJ also awarded Horne all of his medical expenses for the same period, and offered Horne the opportunity of choosing another orthopedist to reevaluate his shoulder. Further, the WCJ found that Lowe’s, through its compensation claims manager, knew that Horne was injured but failed to pay him compensation benefits beyond July 31, 2000. Based on this finding, the WCJ imposed a $2,000 penalty on Lowe’s, and awarded Horne $5,000 in attorney fees. On May 17, 2001, the WCJ signed a judgment memorializing the above findings and awards. Lowe’s then filed this suspensive appeal, urging several errors.

Discussion

Lowe’s appeals the default judgment, citing Horne’s failure to comply with La. R.S. 23:1316.1 (Section 1316.1). Lowe’s claims that the medical evidence submitted at the confirmation hearing violated the statute and was insufficient to support the default judgment.
Although the provisions of Code of Civil Procedure article 1702 generally specify the procedure for the confirmation of default judgments, the Workers’ Compensation Act has a more specialized provision for workers’ compensation cases. La. R.S. 23:1316.1 provides:
| f¡A. A judgment by default on behalf of any party at interest must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
B. A prima facie case shall include but not be limited to proof of the following:
(1) The employee’s average weekly wage.
(2) The existence of an employer-employee relationship at the time of the work-related accident.
(3) The occurrence of an accident arising out of and in the course of the employment, or the existence of an occupational disease.
(4) Entitlement to benefits under the provisions of this Chapter.
*1238 C. Medical evidence shall include oral testimony, or a sworn narrative report from all treating and all examining health care providers. All other evidence may be presented by sworn affidavit.
Under La. C.C.P. art. 1701 et seq., a “prima facie case” is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied, or, in other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at a trial on the merits. Hickman v. William Wrigley, Jr. Co., 33,896 (La.App.2d Cir.10/4/00), 768 So.2d 812, 815.
Horne offered some evidence concerning each of the four elements required under Section 1316.1. He testified that he was employed by Lowe’s at the time of his accident and that his average weekly wage was approximately three hundred dollars, although he offered no check stubs or | fiother written proof of his wages. Horne also testified that he suffered an on-the-job accident involving his elbow, and that the accident left him unable to perform his job duties.
Regarding the element of medical disability, an employee’s status for temporary total disability (“TTD”) benefits is governed by La. R.S. 23:1221. An employee seeking TTD benefits must prove by clear and convincing evidence that he is physically unable to engage in any employment, regardless of its nature, and including employment while working in pain. Baker v. Libbey Glass, Inc., 32,748 (La.App.2d Cir.), 759 So.2d 1007, writ denied, 00-1676 (La.9/15/00), 768 So.2d. 1280.
A sizable portion of Horne’s proof concerning his disability consisted of the medical reports of Dr. Douglas Brown. The WCJ made the following statements showing reliance upon those medical records in rendering judgment:
THE COURT: Well, the only thing I can go by is what I have in my hand. This doctor says that he has estimated MMI, maximum medical improvement, October 1st, 2000. I don’t know what that means and I don’t know what he based that on. But right now it’s the only date that I have.
[[Image here]]
THE COURT: Based on the evidence, Mr. Ross, it appears that Mr. Horne received benefits already through July 31st, and the medicals support a continuing disability from July 31st through October 1st. Do you have any evidence indicating he’s entitled to anything after October 1st?
MR. ROSS: No, Your Honor.
17After review of the record, we find that the WCJ’s ruling regarding the medical disability required proof involving more than just the testimony of Horne and that the WCJ relied upon the disputed medical records.
Evaluating the medical records used to support the default judgment under the special requirements of Section 1316.1(C), we find the medical evidence lacking. Dr. Brown did not testify at the hearing. Further, the documentary evidence admitted does not comply with the formal requirement of a sworn narrative or affidavit.
Prior to the very recent writ grant by the Louisiana Supreme Court in Davis v. Petroleum Club of Lafayette, 01-0142 (La.App. 3d Cir.9/19/01), 795 So.2d 506, writ granted, 01-2818 (La.1/11/02), 806 So.2d 654, the appellate courts of Louisiana had split on the effect of the special requirements of Section 1316.1(C). In the Third Circuit ruling in Davis, an injured worker presented copies of his medical records and testified in accordance with those rec *1239 ords concerning his injury. The OWC confirmed a default judgment in favor of the employee, and the employer appealed, arguing that the OWC should not have considered the unsworn medical records. The court of appeal disagreed, citing La. R.S. 23:1317, the statute setting out rules of procedure in contested cases, which provides in part:
The workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.
IsThe Davis court also cited Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, for the proposition that under the relaxed evidentiary standards in workers’ compensation cases, hearsay evidence may be admitted in a contested trial.
To the contrary, the First Circuit in Nickens v. Patriot Home Systems, 97-291 (La.App. 1st Cir.6/29/98), 713 So.2d 1179, reached a different result. The claimant in Nickens sought temporary total disability benefits as well as medical benefits. At the confirmation hearing, the claimant testified on his own behalf and introduced into evidence medical records evidencing treatment. The OWC confirmed the default, and the employer appealed. Following Section 1316.1(C), the court reversed, finding that “the medical evidence presented by Nickens was not oral testimony from his treating physician, nor was it in the form of a sworn narrative report.” Nickens, supra at 1182. In further support of its ruling, the court cited several cases under La. C.C.P. art. 1701 et seq., including Jules v. Lege, 618 So.2d 1121 (La.App. 5th Cir.), writ denied, 629 So.2d 344 (La.1993), requiring strict compliance with procedural requirements when confirming a default judgment.
In its writ grant and summary reversal in the Davis case, the supreme court stated:
Granted. Because Wilson Joseph Davis, Sr. has not complied with the requirement of La.Rev.Stat. Ann. Sec. 23:1316.1 in presenting statutorily sufficient medical evidence, we set aside the judgment of the hearing officer and remand this matter to the hearing officer for further proceedings. See Nickens v. Patriot Home Systems, 97-0291 (La.App. 1st Cir.6/29/98), 713 So.2d 1179. Judgment set aside and case remanded for further proceedings.
19Following this recent ruling, we find that Section 1316.1(C) was applicable for confirmation of the default. The qualifying initial phrase of Section 1317 provides that the WCJ is “not bound by the technical rules of evidence or procedure other than as herein provided.” Section 1316.1(C) is a specific rule for evidence in the default judgment setting that makes Section 1317 inapplicable. It is one thing for either side to introduce hearsay, medical records in the trial of a workers’ compensation ease with the opposing side present to offer other possible evidence to dispute such hearsay. It is another thing to have such hearsay evidence support a confirmation of default. At the minimum, under Section 1316.1(C), the more formalized and detailed hearsay of a sworn narrative is required to insure the existence of a prima facie case.
Therefore, the WCJ erred by allowing Horne’s medical records to serve as proof of his disability, and we further rule that in this case, the claimant’s testimony alone was inadequate to serve as clear and con *1240 vincing evidence of his inability “to engage in any employment or self-employment” within the meaning of La. R.S. 23:1221(l)(c).

Conclusion

For the reasons stated herein, the decision of the Office of Workers’ Compensation is reversed, and this matter is remanded for further proceedings. Costs of this appeal are assessed to appellee, Paul Horne.
REVERSED AND REMANDED.